THE BOARD OF TRUSTEES OF JUNIOR COLLEGE DISTRICT No. 508, COUNTY OF COOK, Plaintiff-Appellee, *v.* COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, *et al.,* Defendants-Appellants.

(No. 58326; 

First District (4th Division)—September 25, 1974.

Kleiman, Cornfield & Feldman, of Chicago (Gilbert A. Cornfield, of counsel), for appellants.

Roger J. Kiley, Jr., of Chicago, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Board of Trustees of Junior College District No. 508, brought this action for declaratory judgment in the Circuit Court of Cook County against the defendants, Cook County Teachers Union, Local 1600; and Norman G. Swenson, President; William Prince, Vice President; Mary Jane Rudolph, Secretary; George Trent, Treasurer; Michael C. Kaufman, Richard Lerner, Charles Simon, as individuals, as officers, as collective bargaining representatives, and as members and representatives of the class of members of the union.

The issues on appeal are whether the circuit court had jurisdiction to hear and determine the issues presented below; whether the court correctly ruled that arbitrators are without authority to award positions of public employment as remedies for alleged violations of a collective bargaining agreement; and whether the lower court ruling denies the faculty members their constitutional rights.

The Board is a body politic and corporate created by Act. (Ill. Rev. Stat. 1971, ch. 122, § 101—1 *et seq.*) It operates seven junior colleges within the City of Chicago serving approximately 36,000 students and employing approximately 1200 full-time teachers.

The union is a membership association affiliated with the American Federation of Teachers. Since May of 1967, and up to December 31, 1970, the Board and union had signed successive collective bargaining agreements in which the union was recognized as the exclusive bargaining representative for all of the Board's full-time teachers.

The Board and the union began negotiations for a new collective bargaining agreement some months prior to the December 31, 1970, expiration date of their existing agreement, but negotiations did not conclude before the agreement expired.

On January 5, 1971, the teachers began a union-sponsored strike, which resulted in the Board filing an action for an injunction. After much conflict between the parties, the Board and the union began open-court public negotiations in an attempt to settle the dispute. These negotiations were completed on July 20, 1971, and the agreements were incorporated in an agreed decree entered on July 27, 1971. That decree provided in part:

> "The Board and the Union, agreed on July 20, 1971, that this collective bargaining agreement between them is to be made part of this Decree so as to continue the Court's jurisdiction during the term of this agreement (to expire June 30, 1973) for purposes of applying the legal and equitable principles of contract law."

Subsequent to the entry of the agreed decree, both the Board and the

Union invoked the jurisdiction of the court to resolve matters of interpretation of the agreed decree.

In the instant matter the president of one of the colleges operated by the Board recommended that the Board not rehire eight nontenured teachers after the expiration of their 1-year contracts. The union filed grievances on behalf of the teachers seeking a review of the president's judgment and asking the arbitrator to grant employment contracts to the teachers. The case was docketed by the American Arbitration Association and set for hearing.

On July 18, 1972, the Board filed a petition for declaratory relief, requesting the court, pursuant to the agreed decree, to declare that the arbitrator could not legally grant employment contracts to teachers because that power was vested solely in the Board by statute and could not lawfully delegate it to another. The union moved to dismiss the Board's petition on the grounds the court had no jurisdiction to hear and determine the issues.

On July 20, 1972, the court entered its order denying the union's motion and directing it to answer the Board's petition. After the evidence and arguments were heard, the court published a memorandum opinion in which it granted the Board's petition, declaring the Board, by statute, was the only one that could legally hire teaching personnel for the colleges, and that the arbitrator had jurisdiction only to determine whether any of the agreed evaluation procedures incorporated in each faculty member's employment contract had been complied with. In the event he determined a faculty member had been deprived of procedures agreed to, he could only order the Board to comply with the procedure; he could not grant an employment contract as a remedy.

The court formalized this opinion by incorporating it in a decree entered on September 15, 1972, in which it ordered the Board and the union to proceed to arbitration in accordance with his published opinion. Subsequently, as part of an order entered on October 23, 1972, the court made its memorandum opinion equally applicable to two other arbitration cases in which arbitration awards had been issued subsequent to and inconsistent with his memorandum opinion. His October 23, 1972, order vacated the awards of the arbitrators in these two cases insofar as they purported to grant employment contracts to teachers.

This appeal is taken from both the September 15, 1972, decree and the October 23, 1972, order.

The union first states the court was without jurisdiction or authority to restrain or restrict the scope of arbitration before the arbitration was held, and argues that a court cannot assert jurisdiction over parties, either of its own initiative or by the agreement of the parties, and the issue upon which the court ruled, staying and then limiting the scope

of arbitration, had not been the subject of any complaint, petition, or counterclaim previously pending or ruled upon by the court.

The court relied upon the case of *Board of Education v. Rockford Educational Association, Inc.* (1972), 3 Ill.App.3d 1090, but the union states it disagrees with the result and also states the case does not stand as authority for the prior restraint of an arbitration proceeding.

■■ We find the jurisdiction of the trial court was supported by the previous decree which expressly retained jurisdiction, and also under case law. In the *Rockford* case the appellate court upheld a court's order entered in a declaratory judgment action preventing further arbitration proceedings notwithstanding a finding of arbitrability which had already been made by the arbitrator. There, as well as in the instant case, the Board of Education brought before the court, by way of petition for a declaratory judgment, the issues as to whether or not the collective bargaining agreement's arbitration provisions would constitute an illegal delegation of public authority.

■■ It can also be seen from the *Rockford* decision that a prior award of the arbitrator is not a precondition to jurisdiction. In that case the arbitration had not been completed when application was made to the court as the arbitrator had yet to render a decision on the merits. Also, see *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1960), 109 Ill App.2d 224, and *County of Stephenson v. Bradley & Bradley, Inc.* (1971), 2 Ill.App.3d 421. No purpose is served by waiting for the arbitrator to rule upon jurisdiction, which is a purely legal question. In the recent case of *Board of Education v. Johnson* (1974), 21 Ill.App.3d 482, 494, the court stated:

> "We also held that only those items not in contravention of the Code would be subject to arbitration but, because we have held that the determination of qualifications rests with the school administration and is not arbitrable, and since the Johnson grievance involves the question of her qualification, it would serve no useful purpose here to remand this case for a determination of its arbitrability."

The union also suggests the Uniform Arbitration Act supports its position that the court was without jurisdiction to hear the petition for declaratory relief. However, the express provisions of the Act make it inapplicable to the vacation, modification or correction of arbitrations arising out of collective bargaining agreements. Section 12(e) of the Act (Ill. Rev. Stat. 1971, ch. 10, § 112(e)) provides:

> "Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds

for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act."

Even if the Uniform Arbitration Act were applicable, section 12(a) expressly provides that upon application of a party, the court shall vacate an award where "the arbitrators exceed their powers."

■■ There is no question that under the common law a court can stop an arbitrator from exceeding his powers. *Board of Education v. Champaign Education Association* (1973), 15 Ill.App.3d 335; *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1960), 109 Ill.App.2d 224.

■■ There is also no question that an arbitrator is without authority to award positions of employment in the junior colleges of the State of Illinois. Under section 3—26 of the Public Junior College Act (Ill. Rev. Stat. 1971, ch. 122, § 103—26) the Board has the power to make appointments of all teachers, providing only that it "may make no discrimination on account of sex, race, creed, color or national origin." The collective bargaining agreement which formed a part of the previously entered agreed decree contained two provisions limiting the scope of arbitration with respect to Board authority. Article II, section G, of the collective bargaining agreement reads as follows:

> "Board Authority. The Union recognizes that the Board retains full authority to carry out the power and duties granted to it by the Public Junior College Act and other applicable laws."

Article X, entitled "Grievance procedure," provides as follows:

> "The arbitrator shall limit his decision strictly to the application and interpretation of the provisions of this agreement and he shall be without power or authority to make any decision:
>
> \* \* \*
>
> (2) Limiting or interfering in any way with the powers, duties and responsibilities of the Board under applicable law."

The union argues the circuit court's ruling renders certain contract rights of the teachers unenforceable, and that violations by the Board of the evaluation procedures for contract renewal and tenure are therefore not remediable. However, it has been shown the collective bargaining agreement left intact the discretion of the Board to determine who would be offered contracts of employment, a discretion vested in the Board alone by the legislature. The agreement does not delegate that authority to an arbitrator, but provides only for evaluation of the faculty member by his department under procedures established by the department. Those procedures are only advisory in nature and are not binding on the Board.

Under the position taken by the union, that an arbitrator may award

contracts to cure a defect in procedure, the Board is denied the opportunity to cure the defect in the recommendation procedure and re-evaluate the faculty member after a defect-free procedure. Under such a rule, defects in the system would be the best thing that could happen to a faculty member.

■■ Finally, the union argues that by eliminating the possibility of effective remedy the court has abridged each faculty member's constitutional rights of due process. However, in the case of *Board of Regents v. Roth* (1972), 408 U.S. 564, the United States Supreme Court held that the Constitution does not require an opportunity for a hearing before the nonrenewal of a nontenured teacher's contract unless he can show that the decision not to rehire him somehow deprived him of an interest in "liberty" or that he had a "property" interest in continued employment despite the lack of tenure or formal contract. The union acknowledges the case but suggests the companion case of *Perry v. Sindermann* (1972), 408 U.S. 593, is more applicable. In that case the public school teacher alleged the existence of *de facto* tenure and that he was denied due process guarantees when he was fired. The court held that the teacher had a right to develop his case with respect to establishing his right to tenure based on the established policies of the school. The facts in that case are not the same as those in the case at bar where tenure is clearly defined and there is no question that the teachers are not entitled to it.

In *Anderson v. Board of Education* (1945), 390 Ill. 412, the court said of the same authority conferred on the common schools by the school code:

> "Under the prior decisions of this court, no person has a right to demand that he or she shall be employed as a teacher. The school board has the absolute right to decline to employ or to re-employ any applicant for any reason whatever. It is no infringement upon the constitutional rights of any future board to decline to employ a teacher in the schools. It is free to contract with whomsoever it chooses. Neither the constitution nor the statute places any restriction on this right and no one has any grievance which the court shall recognize simply because the board of education refuses to contract with him or her."

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J., and BURMAN, J., concur.