230

SIERRA CLUB *et al.*, Plaintiffs-Appellants, *v.* DAVID KENNEY *et al.*,
Defendants-Appellees.

Fourth District   No. 15977

Opinion filed November 14, 1980.—Rehearing denied December 16, 1980.

WEBBER, J., dissenting.

David Lincoln Ader, of Chicago, for appellants.

Clifford L. Weaver, Special Counsel, and Susan B. Harmon, both of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellee Illinois Department of Conservation.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendants, the Illinois Department of Conservation and its director, David Kenney, invited bids from commercial loggers for the cutting, logging and harvesting of 2,063 trees located on a 345-acre tract in Pere Marquette State Park, which was the site of a fire in 1974. This action was brought to challenge the legality of defendants' plan to selectively harvest these trees and requested that defendants be permanently enjoined from cutting, logging and harvesting trees in State parks. The trial court denied the injunction as requested, but did enjoin defendants from proceeding with the present plan of allowing commercial loggers to cut the trees until certain court-imposed conditions were met.

Dr. James Fralish, an expert on behalf of plaintiffs, testified that the subject area is presently in a state of recovery, with many of the trees killed in the fire sprouting from the base to heights of 6 to 8 feet. Fire is an ecological factor in a forest, as it stimulates the growth of a forest by releasing needed nutrients. Dead, standing trees are natural to a forest area and comprise the wildlife habitat for woodpeckers and other birds. A commercial timber harvest refers to a cutting of trees for a profit. The removal of trees disrupts an area's natural character. The use of heavy equipment during a logging operation tears up the soil, causes erosion and damages young vegetation. In Dr. Fralish's opinion, defendants' proposed plan for Pere Marquette State Park constitutes a commercial timber harvest.

Defendant Kenney testified that the purposes of the proposed cutting were salvage, sanitation, safety and improvement by hastening the regenerative processes. The Department does not have the personnel to perform the work, and does expect to recover the cost of removing the trees by selling them. Allen Mickelson, State forester, characterized the plan as one to improve the forest through rehabilitation. The primary uses of the area in question are recreational pursuits, including hiking, horseback riding, nature study and hunting. Some dead trees will be left for birds and other animals. Mickelson considers the planned cutting to be consistent with good forestry, and conservative compared to practices employed in State forests or on private lands. The four-year delay between the fire and the starting of this operation was partially a result of a policy change concerning State parks within the Department of Conservation, one from pure preservation or recreation to balanced programs involving multiple uses. Mickelson noted that there is an energy shortage and there is a demand for wood.

No similar requests for commercial bids to cut trees in State parks have ever been made. Selective cutting involves cutting individual trees according to some plan and does cause some damage to the surroundings.

The trial judge viewed the area on May 3, 1979. The court found that

defendants have the statutory authority to seek bids and let contracts for the plan to selectively harvest these trees but enjoined defendants from cutting except through its own employees until certain conditions were met to safeguard the area and its use by the public.

The issue presented in this appeal is whether the Department of Conservation has the authority to engage in commercial cutting, logging and harvesting of trees in State parks. Resolution of this issue requires an analysis of the specific provisions of "An Act in relation to the acquisition, control, maintenance, improvement and protection of State parks and nature preserves" (hereinafter State Parks and Nature Preserves Act) (Ill. Rev. Stat. 1977, ch. 105, par. 465 *et seq.*) and the general powers conferred upon the Department of Conservation, enumerated in the Civil Administrative Code (Ill. Rev. Stat. 1977, ch. 127, pars. 63a1 through 63b1).

As trustees for the public, the Department of Conservation is entrusted with the care, control, supervision and management of all State parks (Ill. Rev. Stat. 1977, ch. 105, par. 465) pursuant to certain legislatively mandated purposes and objectives (Ill. Rev. Stat. 1977, ch. 105, par. 466). The objective relevant to the case at hand charges the Department of Conservation with the duty of preserving large forested areas for recreational use different from that given by typical city parks, so that these areas may remain unchanged by civilization, so far as possible, and be kept for future generations. (Ill. Rev. Stat. 1977, ch. 105, par. 466(3).) In maintaining State parks, the Department shall conserve the natural character as distinguished from artificially landscaping them (Ill. Rev. Stat. 1977, ch. 105, par. 467). The Department is empowered to contract with any agency, organization or individual consistent with the purposes and the powers granted it in the State Parks and Nature Preserves Act (Ill. Rev. Stat. 1977, ch. 105, par. 468(6)). It is in light of the above-stated provisions that the Department's authority to commercially harvest trees in State parks must be examined.

Defendants refer us to, and the trial court found, authority for the proposed plan under the provisions of the Civil Administrative Code (Ill. Rev. Stat. 1977, ch. 127, pars. 63a1 through 63b1). Section 63a26 of that Act gives the Department of Conservation the power to sell surplus agricultural products grown on land owned by the Department, when such products cannot be used by the Department. The court below concluded that cutting, logging and harvesting of trees constitutes the sale of an agricultural product. We disagree. The term "agriculture" is defined as the art or science of cultivating the ground, and its broad use does include farming, horticulture and forestry. (*County of Lake v. Cushman* (1976), 40 Ill. App. 3d 1045, 1048, 353 N.E.2d 399, 402; *People ex rel. Pletcher v. City of Joliet* (1926), 321 Ill. 385, 388-89, 152 N.E. 159, 160.) But even when this broad definition is applied to the context of cutting trees in

State parks, it is clear that such trees are not "agricultural products" as intended by this section. In our opinion, surplus agricultural products refers to products actually grown by the Department, such as crops of timber grown in State forests. We believe it is of particular significance that the State Forest Act authorized the Department of Conservation to sell timber grown in State forests (Ill. Rev. Stat. 1977, ch. 96½, par. 5906). No comparable authorization exists in the State Parks and Nature Preserves Act.

■■■ The Civil Administrative Code further confers upon the Department of Conservation the right to sell gravel, sand, earth and other material from any land under its jurisdiction (Ill. Rev. Stat. 1977, ch. 127, par. 63a27). The defendants claim this provision authorizes it to harvest trees in State parks. We conclude this provision provides no such authority. A canon of statutory construction, the doctrine of *ejusdem generis*, is that where a statute specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that the persons or things therein comprised may be read as *ejusdem generis* "with," and not a quality superior to or different from those specifically enumerated. (*Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436, 328 N.E.2d 318, 320.) Clearly, this statute's reference to "other materials" does not embrace the trees in State parks. This provision cannot be read to authorize defendants' planned harvest of trees from Pere Marquette State Park. To do so would be to strain not construe the statute.

■■ ■ Defendants argue that the subject plan represents sound and sensible woodland management. Defendants rely on the power to take such measures for the promotion, encouragement, protection and conservation of forests and to promote forestry in this State, including but not limited to reforestation, woodland management and forest marketing, and to exercise the rights, powers and duties and relation thereto as may be conferred by law (Ill. Rev. Stat. 1977, ch. 127, par. 63a8). Again, this provision cannot be read to authorize timber harvests in State parks. Such an interpretation would violate the specific duty of preserving forested areas, unchanged by civilization, imposed upon the Department of Conservation by the State Parks and Nature Preserves Act. Laws must be interpreted consistently with one another where possible. (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 88, 315 N.E.2d 215, 219.) If inconsistent, specific provisions will prevail over provisions designed to apply generally. (*Cook County Police & Corrections Merit Board v. Illinois Fair Employment Practices Com.* (1978), 59 Ill. App. 3d 305, 308, 376 N.E.2d 11, 13.) Simply stated, defendants here cannot rely on the general authority to promote forestry and woodland management be-

cause they are specifically required to preserve the forested areas of State parks in their natural state.

Defendants contend the issue is not whether any specific statutory provision authorizes this plan, but rather, whether the means chosen are reasonable to achieve the legitimate goal of hastening the regenerative process in the burned area of Pere Marquette State Park. Defendants characterize their plan as a good faith attempt to promote a healthy forest. We realize that the defendant director, and those who have preceded him and will succeed him, may well believe that with their help, nature can be improved. We are unconvinced that the defendant director can improve Mother Nature. We agree with plaintiff that defendants' proposed plan constitutes commercial exploitation of this State's parks. It does not matter that the motive may be to improve. The statutory authorization is simply not there.

■■ The trial court erred in concluding the Department of Conservation is authorized to selectively cut, log and harvest trees in State parks. The trial court compounded this error by conditioning its denial of an injunction upon the defendants' compliance with conditions specified by it. Injunctive relief will not be granted against a public agency with respect to its official acts, unless such acts are outside its authority or are unlawful. And, a court will not interfere with the discretion of public officers unless the officer has acted arbitrarily and capriciously and has thereby abused his discretion. (See *Rocke v. County of Cook* (1978), 60 Ill. App. 3d 874, 377 N.E.2d 287; *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406.) To find that a public agency has the authority to perform certain acts, and then to direct the agency how to perform those acts, is beyond the power of the courts.

We reverse and remand with directions that defendants be enjoined as sought in the complaint.

Reversed and remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE WEBBER, dissenting:

If the majority opinion had been the law in fifth century Greece, the Parthenon could not have been built. If it had been the law of the Galapagos Islands in the 19th century, Charles Darwin would not have been permitted to set foot thereon. Examples could be multiplied almost without number where civilization could have suffered immeasurably as a result of mindless atavism.

The difficulty with the majority position is that it fails to differentiate between State parks and nature preserves. The statute makes a plain

distinction throughout and recognizes that they fulfill different functions. The very title of the statute demonstrated the different entities: "An Act in relation to the acquisition, control, maintenance, improvement and protection of State parks and nature preserves." Nature preserves were added to the Act in 1963. Legislation concerning State parks, on the other hand, has been in existence at least since 1911.

The State Parks and Nature Preserves Act (Ill. Rev. Stat. 1977, ch. 105, par. 465 *et seq.*) (the Act) in section 1 requires that all parks be open to the people of this State. Section 2a requires that nature preserves be preserved and protected against modification resulting from occupation or development which would destroy their natural condition. Parks, therefore, are to be managed and made suitable for use by all the people. Nature preserves are to be somehow mummified so that the well-known prediliction of the proletariat for destruction and vandalism may be prevented. The Act makes the general distinction between conservation (parks) and preservation (nature preserves).

The majority overlooks and ignores critical language in the general powers given to the Department of Conservation in the Act concerning parks only. Section 2(3) requires that large forested areas in parks be preserved "for a recreation use different from that given by the typical city park" and that that area remain "unchanged by civilization, *so far as possible*, * * *." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 105, par. 466(3).

The language plainly indicates to me that State parks will not have baseball diamonds, football fields, tennis courts, ice rinks, and swimming pools, but rather, picnic grounds, hiking trails, lookout towers, and observation points. The phrase, "so far as possible," is a plain indication to me that the legislature knew that use by the public would be antithetical to a forest primeval. It therefore permitted modifications of the natural surroundings in parks, but reserved the pristine state for nature preserves.

I see no necessity to resort to the Civil Administrative Code in order to find authority in the Department to conduct logging in the park. Section 1 of the Act vests broad management powers in the Department and section 4(6) authorizes it to contract with anyone consistent with the purposes of the Act. The record in the trial court indicates that the Department had carefully considered what might be done with the burn area and had acted on the best advice it could obtain. By ordering the trial court to enter a permanent injunction, this court has made an unwarranted intrusion into the prerogatives of the executive branch of government and in effect has constituted the plaintiff in this suit as a shadow Department of Conservation, unelected and unappointed, responsible only to itself.

I am left with the distinct impression that the plaintiff's concern is not

so much for parks and trees, but with money. At oral argument plaintiff's counsel indicated that its motive was to prevent any profit-making in State parks and that any profit from State parks was "suspect." The majority apparently concurs, *sub silentio*, with its reference to "commercial exploitation." The record does not bear this out. The Director of the Department testified without contradiction that there was no policy established to conduct commercial logging operations in State parks and the operation proposed in Pere Marquette came about as a result of shortage of department personnel and the hope of recovering at least part of the cost of rehabilitation by selling the logs. The unanswered question is whether there would have been any lawsuit at all if the logging in Pere Marquette were being done by the department itself.

I agree with the majority that the trial court was in error in imposing its own conditions on the logging operation. I strenuously disagree with the majority's imposition of an injunction, especially after a pious recital of the doctrine of judicial restraint in the interference with the discretion of a public officer. The State parks will be given over to brambles, briars and buckeybrush.

I would vacate the trial court's order imposing special conditions, and I would affirm its denial of injunctive relief.