THE BOARD OF EDUCATION OF ROCKFORD SCHOOL DISTRICT No. 205, Plaintiff-Appellee, v. ROCKFORD EDUCATION ASSOCIATION *et al.*, Defendants-Appellants.

Second District   No. 85—0505

Opinion filed November 26, 1986.—Rehearing denied January 5, 1987.

Gregory J. Malovance, of Winston & Strawn, of Chicago, and Stephen G. Katz, of Kelly, Haus & Katz, of Madison, Wisconsin, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Michael V. Casey and Michael J. Hayes, Assistant Attorneys General, of Chicago, of counsel), for *amicus curiae* Illinois Educational Labor Relations Board.

Thomas A. Bueschel, of Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

On January 2, 1985, the Rockford Education Association (Association) filed a grievance against the board of education of Rockford School District No. 205 (board of education) relating to the procedures for filling vacancies. Thereafter the board of education filed a petition for rule to show cause why the Association should not be held in contempt for violating a prior injunction enjoining the Association from filing arbitration demands on questions of discretionary teacher appointments. The Association then moved to dissolve the injunction on the ground that it had been superseded by the recently enacted Illi-

nois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.*) (IELRA or Act). The circuit court of Winnebago County denied the Association's motion to dissolve the injunction on June 12, 1985, and this appeal followed.

The relevant facts in this case are not in dispute. In June 1983 both Carl Nielsen and Judith Luter applied for a position as a counselor at Guilford High School. When the board of education appointed Luter to the position, the Association, as the recognized exclusive bargaining representative of the professional staff of Rockford School District No. 205, filed a grievance on the basis that Nielsen was the most senior qualified applicant. The Association based its grievance on a clause in the 1981-84 collective-bargaining agreement which stated:

> "If more than one applicant has applied for the same position the applicant best qualified for that position shall be appointed, and qualifications being substantially equal, seniority in the school system shall control."

Efforts to resolve this dispute were unsuccessful, and the Association submitted the grievance to binding arbitration pursuant to the collective-bargaining agreement. The board of education, however, refused to arbitrate the grievance and filed a complaint for declaratory judgment and permanent injunction on the theory that "notwithstanding anything to the contrary contained within the Agreement, the discretionary appointment of teachers to employment positions is a power vested exclusively in the school district, is not delegable, and, therefore is not a proper subject of arbitration." The trial court agreed with the board of education and entered a permanent injunction on July 13, 1984, enjoining the Association from filing arbitration demands on "questions of discretionary teacher appointment."

During the 1984-85 school year, a similar vacancy opened at Auburn High School, and Nielsen again applied. By this time the parties had executed a new three-year collective-bargaining agreement for the 1984-87 school years. This agreement was negotiated under the IELRA that had become effective on January 1, 1984. This contract also contained the language:

> "If more than one applicant has applied for the same position, the applicant best qualified for that position shall be appointed, and qualifications being substantially equal, seniority in the school system shall control."

Nielsens' application for the Auburn High School counselor vacancy was also denied, and the Association filed a second grievance alleging that Nielsen was the most senior qualified applicant. Unable

to resolve the grievance, the Association filed a demand for arbitration on January 2, 1985. Once again the board of education refused to arbitrate the grievance on the basis that it was prohibited by the July 13, 1984, permanent injunction. The board of education then filed a petition for a rule to show cause why the Association should not be held in contempt of court for violating that injunction. The Association answered the petition and moved to dissolve the injunction on the theory that the IELRA had superseded the injunction and required the board of education to bargain over procedures for filling vacancies and, if necessary, to arbitrate disputes arising therefrom.

On June 12, 1985, the Association's motion to dissolve the injunction was denied, and the Association and its president, Thomas Morgan, were held in contempt. The Association thereafter filed this appeal from the order refusing to dissolve the injunction. No appeal has been taken from the finding of contempt because no sanction was imposed. The Illinois Educational Labor Relations Board (Labor Board) was given leave to file a brief as *amicus curiae*.

I

■ The first issue raised is whether the trial court exceeded its subject matter jurisdiction by deciding the arbitrability of the parties' dispute. Neither the Association nor the Labor Board disputes the trial court's jurisdiction to decide the continued validity of its own prior injunction. Rather they argue that the trial court did not have jurisdiction to determine the arbitrability of the dispute and should have dissolved the injunction solely on the basis that under the IELRA it was now within the Labor Board's exclusive primary jurisdiction to decide initially the arbitrability of the grievance.

This precise issue was recently addressed in *Board of Trustees v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617. There a teacher filed a grievance after she was found unqualified to teach a nutrition class which was later assigned to her program director. After her grievance was denied her union submitted it to arbitration, and the board of trustees filed an action to enjoin the arbitration proceeding on the basis that its decisions with respect to teacher qualifications were nondelegable and, therefore, were not subject to arbitration. The appellate court held that the circuit court did have subject matter jurisdiction to determine initially the arbitrability of the grievance because the union's attempt to arbitrate an allegedly inarbitrable matter was not explicitly listed as an unfair labor practice as defined by the IELRA and, therefore, the IELRA did not abolish the traditional circuit court action to enjoin arbitration. The

court stated:

> "[E]ven if this particular unfair labor practice encompasses an employer's refusal to arbitrate, the statutory enumeration of unfair labor practices pertaining to the union does not include a provision allowing the board to charge the union with an unfair labor practice based upon an attempt to arbitrate an allegedly inarbitrable matter.
>
> * * *
>
> It is clear that the union's attempt to arbitrate an allegedly inarbitrable matter does not constitute an unfair labor practice as defined by the IELRA and the statute thus does not prohibit the type of action filed by the board of trustees here. We therefore find that the IELRA does not abolish a traditional action in the circuit court to enjoin arbitration and, accordingly, we hold that the trial court had subject matter jurisdiction." 139 Ill. App. 3d 617, 620-21.

The Association argues, however, that *Cook County College Teachers Union* was wrongly decided because the court's holding was based on the mistaken premise that an employer may not file an unfair-labor-practice charge when a union seeks to arbitrate an allegedly inarbitrable matter. The Association contends that it is well established under the National Labor Relations Act (NLRA) (29 U.S.C.A. sec. 151 *et seq.* (West 1973)), which is similar to the IELRA, that an employer is permitted to charge a union with a "refusal to bargain" unfair labor practice when a union attempts to arbitrate an allegedly inarbitrable dispute.

We note initially that both section 14(b)(3) of the IELRA and section 8(b)(3) of the NLRA make it an unfair labor practice for a labor organization or its agents to refuse to bargain collectively. Therefore, we agree with the Association that cases decided under the NLRA are useful in interpreting the IELRA. We are persuaded, however, that the case law interpreting the NLRA supports the court's decision in *Cook County College Teachers Union.*

Under the NLRA, it is well established that, while the courts may not weigh the merits of a dispute, the courts do have subject matter jurisdiction to determine initially the substantive arbitrability of a particular grievance. *(United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 5 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347.) That is to say, the threshold question of whether a party is bound by its collective-bargaining agreement to arbitrate, as well as what issues it must arbi-

trate, is generally a matter for a court to determine. (*Atkinson v. Sinclair Refining Co.* (1962), 370 U.S. 238, 241, 8 L. Ed. 2d 462, 465, 82 S. Ct. 1318, 1320.) The rationale for this rule is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." (*United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353.) Our courts have also followed this rule in public-employee labor disputes. (*Board of Education v. Williams* (1983), 118 Ill. App. 3d 256.) As in the present case, the issue of arbitrability often reaches the court when the party challenging the arbitrability of the grievance seeks an injunction or stay of arbitration. F. Elkouri & E. Elkouri, How Arbitration Works, at 213 (4th ed. 1985).

One exception to this rule is when the parties mutually agree, either in their collective-bargaining agreement or by an explicit or implicit special submission or stipulation, to allow the arbitrator to initially determine the arbitrability of a grievance. (F. Elkouri & E. Elkouri, How Arbitration Works, at 216 (4th ed. 1985).) In this situation the issue of arbitrability reaches the arbitrator either by the employer filing what, out of necessity and convenience, is termed an unfair-labor-practice charge based on the union's attempt to arbitrate an allegedly inarbitrable dispute, or by the union filing an unfair-labor charge based on the employer's refusal to discuss a grievance, or both.

■ Contrary to the Association's argument, the court in *Cook County College Teachers Union* did not base its decision on the mistaken premise that an employer could not file an unfair-labor-practice charge when a union seeks to arbitrate an allegedly inarbitrable grievance. The court did not state that an employer, by agreement or mutual consent, could not file an unfair-labor-practice charge under such circumstances. Rather, the court simply stated that the union's unfair-labor-practice provisions of the IELRA (Ill. Rev. Stat. 1985, ch. 48, par. 1714(b)) did not make it an unfair labor practice and, therefore, the Act did not abolish the traditional circuit court action to enjoin arbitration. Having reviewed these provisions, we agree that they do not make it an unfair labor practice for a union to attempt to arbitrate an inarbitrable grievance. We therefore reject the Association's contention that the case from Cook County was wrongly decided and hold that the circuit court of Winnebago County did have subject matter jurisdiction to determine initially the substantive arbitrability of the grievance.

## II

■ Having disposed of the threshold question of subject matter jurisdiction, we reach then the narrow, base substantive issue in the case at bar: Has IELRA abolished the long-established rule that discretionary appointment of teachers is a power vested exclusively in the school district and is not delegable?

This court said in an earlier dispute between the instant parties, *Board of Education v. Rockford Education Association, Inc.* (1972), 3 Ill. App. 3d 1090, 1093:

> "It has been held that a board of education does not require legislative authority to enter into a collective bargaining agreement and that such an agreement is not against public policy. (*Chicago Div. Ill. Ed. Ass'n. v. Board of Ed.* (1966), 76 Ill. App. 2d 456, 472.) However, a board may not, through a collective bargaining agreement or otherwise, delegate to another party those matters of discretion that are vested in the board by statute. The School Code provides that the board has the duty 'To appoint all teachers and fix the amount of their salaries ***.' (Ill. Rev. Stat. 1969, ch. 122, par. 10—20 and 10—20.7). The cases have held that these are among the powers and duties of a board that cannot be delegated or limited by contract. *Elder v. Board of Ed. of School Dist. No. 127½* (1965), 60 Ill. App. 2d 56, 68; *Stroh et al v. Casner et al* (1916), 201 Ill. App. 281, 286; *Lindblad v. Board of Education* (1906), 221 Ill. 261, 271."

Our holding there has been cited and followed in *Board of Education v. Johnson* (1974), 21 Ill. App. 3d 482, 486-488, and *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1974), 22 Ill. App. 3d 1060, 1063, *aff'd* (1976), 62 Ill. 2d 470.

We take notice that IELRA states a broad policy:

> "It is the public policy of this State and the purpose of this Act to promote orderly and constructive relationships between all educational employees and their employers. Unresolved disputes between the educational employees and their employers are injurious to the public, and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. It is the purpose of this Act to regulate labor relations between educational employers and educational employees, including the designation of educational employee representatives, negotiation of wages, hours and other conditions of employment and resolution of disputes arising under collective bargaining agreements. The Gen-

eral Assembly recognizes that substantial differences exist between educational employees and other public employees as a result of the uniqueness of the educational work calendar and educational work duties and the traditional and historical patterns of collective bargaining between educational employers and educational employees and that such differences demand statutory regulation of collective bargaining between educational employers and educational employees in a manner that recognizes these differences. Recognizing that harmonious relationships are required between educational employees and their employers, the General Assembly has determined that the overall policy may best be accomplished by (a) granting to educational employees the right to organize and choose freely their representatives; (b) requiring educational employers to negotiate and bargain with employee organizations representing educational employees and to enter into written agreements evidencing the result of such bargaining; and (c) establishing procedures to provide for the protection of the rights of the educational employee, the educational employer and the public." (Ill. Rev. Stat. 1985, ch. 48, par. 1701.)

But the Act also provides:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." (Ill. Rev. Stat. 1985, ch. 48, par. 1710(b).)

Absent an expression from the legislature of its clear intent to abrogate a rule derived from the School Code, reinforced by judicial interpretation, we affirm the trial court's adherence to the principle of nondelegability.

Decisions from the courts of other jurisdictions that have reached a contrary result in construing somewhat similar statutes do not persuade us that such was the intent of our legislature. We therefore affirm the circuit court of Winnebago County.

Affirmed.

HOPF and STROUSE, JJ., concur.