CAC GRAPHICS, INC., *et al.*, Plaintiffs-Appellants, v. TAYLOR CORPO-
RATION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—1731

Opinion filed April 7, 1987.

Gould & Ratner, of Chicago (Louis R. Hegeman and Jay D. Stein, of counsel), for appellants.

Kirkland & Ellis, of Chicago, and Regan, Regan & Meyer, of Mankato, Minnesota (Frank Cicero, Steven J. Harper, Helen E. Witt, and John E. Regan, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff brought an action seeking a declaratory judgment as to the net worth of a printing business sold by them to defendants. Defendants objected that presenting this matter to the circuit court created a controversy under an arbitration clause entered into by the parties in a related agreement and demanded arbitration. Following a hearing, the circuit court stayed the proceedings before it and ordered the parties to arbitrate the entire dispute before a Minnesota arbitration panel. Plaintiff appeals.

Plaintiff, CAC Graphics (CAC), was engaged in the business of designing, manufacturing, and marketing greeting cards, stationery, and similar paper products through its ownership of the Nu-Art Group. CAC was owned by plaintiff Century America Corporation (Century). Defendant Taylor Corporation (Taylor) was also engaged in the greeting card and stationery business. Defendants Glen Taylor and Albert Fallenstein were officers and directors of Taylor at the time of all relevant events. Chicago Title and Trust Company, holder of a subject escrow valued at approximately $1 million, was also named as a defendant.

CAC owned all of the shares of an Illinois corporation called Nu-Art, Inc., which in turn owned all issued shares of the Nu-Art Group, a collection of three subsidiaries. In the fall of 1984, CAC entered into an agreement to sell the Nu-Art Group to Taylor, who would purchase all issued shares of Nu-Art, Inc. As agreed upon by a written share purchase agreement, dated November 1, 1984, the purchase price would be the net worth of the Nu-Art Group as of December 31, 1984. This net worth was to be determined by a certified audit by the public accounting firm of Coopers & Lybrand, in accordance with generally accepted accounting principles. The document defined the rights and obligations of the parties with respect to the sale of the Nu-Art Group. At the closing, Taylor paid a portion of the purchase price and deposited $1 million into escrow, to be disbursed by defendant Chicago Title according to the determination by Coopers & Lybrand. The share purchase agreement specified that the legal relationships between the parties under the agreement were to be determined under Illinois contract law. The share purchase agreement did not contain an arbitration clause.

On December 31, 1984, the parties also entered into a noncompetition agreement under which CAC, Century, and William Hokin, officer and director of CAC, agreed not to compete with Taylor for a period of five years. As consideration for this agreement, Taylor agreed to pay Hokin $1.5 million in quarterly installments. An "offset" provision was

also contained in the noncompetition agreement which stated that to the extent that there were any amounts due Taylor from CAC pursuant to the share purchase agreement which CAC was unwilling to pay, Taylor might offset such amounts against the payments due Hokin under the noncompetition agreement. The noncompetition agreement also contained a clause which provided for arbitration in Minnesota "of any controversy arising under this agreement." Taylor never contended that Hokin violated the noncompetition agreement.

In early 1985, Taylor delivered to Coopers & Lybrand a financial statement of Nu-Art's net worth as of December 31, 1984. CAC thereafter proposed adjustments to the financial statement which Coopers & Lybrand declined to accept. In light of these conflicting financial analyses, Coopers & Lybrand refused to make a determination of the net worth of the Nu-Art Group.

As a result of the above dispute over the net worth of the Nu-Art Group, Taylor suspended its quarterly payments to Hokin under the noncompetition agreement. When Hokin attempted thereafter to draw on the letter of credit securing Taylor's payments to him, Taylor instituted a Minnesota action to enjoin him from doing so. On December 30, 1985, Taylor gave CAC and Hokin notice of its election to exercise its right of offset under the noncompetition agreement, based on the fact that amounts were now due Taylor under the share purchase agreement. Thereafter, Taylor did not make payment to Hokin but deposited the disputed sum in escrow.

On February 14, 1986, CAC and Century filed suit against Taylor and officers Glen Taylor and Albert Fallenstein for Taylor's refusal to make payments under the noncompetition agreement. CAC sought therein a declaratory judgment as to the net worth of Nu-Art, damages for Taylor's breach of contract to Hokin, and damages for Taylor's false financial statements which caused Coopers & Lybrand to fail to make a valuation of Nu-Art.

Thereafter, Taylor sought to compel arbitration of the dispute pursuant to the arbitration clause in the noncompetition agreement. CAC responded by filing an amended complaint in which it sought to enjoin Taylor from proceeding with arbitration. After a hearing, at which the circuit court found that the entire dispute embodied in plaintiffs' amended complaint, as it had arisen and developed, was arbitrable, the court entered an order on April 16, 1986, staying CAC's action pending arbitration. On June 2, 1986, upon reconsideration, the court affirmed its previous order.

■ CAC's first contention on appeal is that the instant dispute does not contain any issue which is subject to arbitration. Rather, the

issue is the net worth of Nu-Art, a dispute under the share purchase agreement, which does not have an arbitration clause.

Generally, Illinois courts have found that a trial court, and not an arbitrator, should make the initial determination of whether a specific matter falls within an arbitration agreement as a matter of law. *Donaldson, Lukfin & Jenrette Futures, Inc. v. Edwin C. Barr* (1987), 151 Ill. App. 3d 597; *Board of Trustees v. Cook County College Teacher's Union* (1985), 139 Ill. App. 3d 617, 487 N.E.2d 956; *Consolidated Broadcasting Corp. v. American Arbitration Association* (1983), 115 Ill. App. 3d 577, 450 N.E.2d 1252.

█▌ █ In Illinois, arbitration is a favored method of resolving disputes. (*First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 467 N.E.2d 932; *Brennan v. Kenwick* (1981), 97 Ill. App. 3d 1040, 425 N.E.2d 439.) Once a contract containing a valid arbitration clause has been executed, the parties are irrevocably committed to arbitrating all disputes arising under the agreement. (*First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 467 N.E.2d 932; *School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25.) However, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149; *Silver Cross Hospital v. S. N. Nielsen Co.* (1972), 8 Ill. App. 3d 1000, 291 N.E.2d 247.) A general provision for arbitration of all disputes arising in connection with a contract does not require arbitration of all disputes which might arise between the parties to a contract, but just those disputes which the parties by "crystal clear language" agree to arbitrate. *Silver Cross Hospital v. S. N. Nielsen Co.* (1972), 8 Ill. App. 3d 1000, 291 N.E.2d 247; *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289.

In *Silver Cross Hospital*, where the contract between the plaintiff hospital and defendant construction company contained a general arbitration provision to arbitrate all disputes in connection with the contract, the appellate court found that plaintiff did not agree to arbitrate its liability to defendant for water damage resulting from heavy rains at the construction site. The appellate court reasoned that the contract provisions spoke only of defendant's responsibilities with respect to water, but made no reference to any responsibilities of plaintiff relating to water damage which plaintiff would arbitrate. Similarly, in *Flood*, plaintiff sought damages from defendant insurance company for

the death of his son arising out of a collision with an uninsured vehicle pursuant to an automobile insurance contract between the parties. The Illinois Supreme Court found that the dispute was not subject to arbitration where the arbitration paragraph of the policy was particular, not general, and referred only to disputes concerning liability between the insured and the owner or operator of an uninsured vehicle, but made no agreement to subject the issue of coverage to arbitration.

■ Here, it is clear that the parties never agreed to arbitrate any issues under the share purchase agreement, including the net worth of the Nu-Art Group. The share purchase agreement does not contain an arbitration provision but, to the contrary, specifies that the legal relationships between the parties under that agreement are to be determined under Illinois contract law. The contract provisions regarding arbitration in the noncompetition agreement refer only to the arbitration disputes arising from that single and separate agreement. In light of *Flood* and *Silver Cross Hospital,* we find that where the arbitration provision was particular, not general, and referred only to disputes concerning the noncompetition contract between Hokin and Taylor, the instant dispute regarding net worth is not subject to arbitration.

Taylor argues that the instant dispute is arbitrable under the noncompetition agreement arbitration provision because, under count III of CAC's amended complaint, CAC sued Taylor for breach of the noncompetition agreement. Taylor maintains that because that controversy could not be resolved without determining Nu-Art's net worth, arbitration of the entire controversy is required. We reject this argument by Taylor, as any controversy which may exist under the noncompetition agreement exists only because Taylor ceased its quarterly payments to Hokin, which it contends was due to the parties' dispute as to the net worth of Nu-Art. By ceasing its payments, Taylor endeavored to have this dispute improperly resolved by arbitration.

The instant controversy between the parties is not subject to arbitration. The parties never agreed to arbitrate this matter and should not be compelled to do so. We find that the trial court improperly compelled arbitration.

In light of the foregoing, the order of the circuit court is reversed and remanded for further proceedings.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.