BOARD OF EDUCATION OF WARREN TOWNSHIP HIGH SCHOOL DISTRICT NO. 121, Plaintiff-Appellee, v. WARREN TOWNSHIP HIGH SCHOOL FEDERATION OF TEACHERS, Local 504, IFT/AFT, AFL-CIO, *et al.*, Defendants-Appellants.

Second District Nos. 2—87—0625, 2—87—0661 cons.

Opinion filed November 20, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Shawn W. Denny, Solicitors General, Grace Allen Newton, Assistant Attorney General, and Randi C. Hammer, of Illinois Educational Labor Rela-

tions Board, of Chicago, of counsel), for appellant Illinois Educational Labor Relations Board.

Haggerty & Koenig, of Chicago (Mildred F. Haggerty, of counsel), for appellant Warren Township High School Federation of Teachers.

Robinson, Brebner & Moga, of Lake Bluff (Dennis A. Brebner, of counsel), for appellee.

Gregory J. Malovance, of Winston & Strawn, of Chicago, for *amicus curiae.*

JUSTICE REINHARD delivered the opinion of the court:

Defendants, Warren Township High School Federation of Teachers (Union) and the Illinois Educational Labor Relations Board (IELRB), bring these interlocutory appeals pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)), consolidated in this court, from the order of the circuit court of Lake County granting plaintiff, Board of Education of Warren Township High School District 121 (School Board), a preliminary injunction enjoining the Union from proceeding to arbitration and the IELRB from conducting a hearing on the Union's unfair labor practice claim.

The facts are not in dispute. The School Board is organized to operate the schools in Warren Township High School District 121 in Lake County, Illinois, pursuant to the Illinois School Code (Ill. Rev. Stat. 1985, ch. 122, par. 10—1 *et seq.*). The Union is the duly recognized bargaining unit for teachers in District 121. The IELRB is organized pursuant to the Illinois Educational Labor Relations Act (Act). Ill. Rev. Stat. 1985, ch. 48, par. 1705.

The Union represented Ms. Judith Frank, a former, nontenured teacher employed by District 121, under a collective bargaining agreement. Ms. Frank was employed for the years 1984-85 and 1985-86 in a probationary status. In April 1986, the superintendent of schools notified Ms. Frank that she would not be rehired for the 1986-87 school year and that her termination would become effective in June 1986.

The Union then filed a grievance on Ms. Frank's behalf claiming a violation of article V, sections A6 through A9 of the collective bargaining agreement in effect for the years 1985-88. Article V, sections A6 through A9, establish certain procedures for the evaluation of probationary teachers.

After denial of the grievance, the Union filed a demand for binding arbitration with the American Arbitration Association in June

1986, pursuant to article IX of the collective bargaining agreement, and requested that Ms. Frank be reinstated to her former position. On February 2, 1987, the School Board notified the Union that it would not submit to binding arbitration because the subject matter of the grievance concerned a discretionary, nondelegable power of the School Board and was, therefore, inarbitrable. The Union, on February 13, 1987, filed an unfair labor practice charge with the IELRB based on the School Board's refusal to submit to arbitration and pursuant to sections 4(a)(1) and (a)(5) of the Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5)). After investigating the claim, the IELRB issued a complaint and set the matter for hearing on June 4, 1987.

On February 25, 1987, the School Board filed its original complaint in the circuit court of Lake County, seeking a declaratory judgment as to the arbitrability of the grievance and a preliminary injunction to prevent the Union from arbitrating the grievance. It later filed an amended complaint seeking to enjoin the IELRB from conducting its hearing. On June 3, 1987, the circuit court issued the preliminary injunction. The order enjoined the Union and Ms. Frank from proceeding with arbitration before the American Arbitration Association scheduled for June 11, 1987, and also enjoined the IELRB from proceeding with its unfair labor practice hearing until the circuit court could decide the merits of the School Board's claim.

The Union appeals the preliminary injunction preventing it from proceeding with arbitration and preventing the IELRB from conducting the unfair labor practice hearing. The IELRB appeals the preliminary injunction to the extent that it prevents it from conducting the hearing.

The Union contends that the circuit court improperly enjoined the arbitration because under the Act the IELRB has jurisdiction to decide labor disputes between educational employers and employees. Specifically, the Union argues that the legislature, in passing the Act, intended the IELRB to be the exclusive forum for the resolution of educational labor disputes. The Union further asserts that because the IELRB has jurisdiction to decide labor disputes pursuant to section 14 of the Act, and as there is a pending unfair labor practice charge before the IELRB, the IELRB, therefore, has primary jurisdiction which the circuit court cannot enjoin. The School Board responds that the Act does not divest the circuit court of its jurisdiction to initially determine the arbitrability of a grievance and, therefore, the circuit court properly enjoined the arbitration as well as the IELRB hearing.

In analyzing this first issue, we initially note the applicability of

this court's prior decision in *Board of Education v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, 501 N.E.2d 338. The Union attempts to distinguish the *Rockford* decision on the ground that, in that case, the appellate court held that there was no unfair labor practice charge based on a union's attempt to submit an allegedly inarbitrable grievance to arbitration and, therefore, the IELRB was without jurisdiction. The Union argues that the present case is different because, here, there is an unfair labor practice charge pending based on the School Board's refusal to arbitrate and, therefore, the IELRB does have jurisdiction. We do not find that distinction to be crucial to the disposition of this case.

The ultimate issue to be decided here, as it was in *Rockford*, is whether the Act divests the circuit court of its traditional jurisdiction to decide whether a particular grievance is arbitrable. If the circuit court retains its jurisdiction under the Act, it is the appropriate forum to decide questions of arbitrability.

■ ■ We begin by noting that, traditionally, circuit courts have made the initial determination of whether a particular matter falls within an arbitration agreement and is, therefore, arbitrable as a matter of law. (*CAC Graphics, Inc. v. Taylor Corp.* (1987), 154 Ill. App. 3d 283, 286, 507 N.E.2d 171; *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1987), 151 Ill. App. 3d 597, 600-01, 503 N.E.2d 786, *appeal allowed* (1987), 114 Ill. 2d 544.) Parties are only bound to arbitrate those issues which they have expressly agreed to arbitrate, and a general provision for arbitration of all disputes arising out of a contract does not require arbitration of all disputes which might arise between the parties. (*CAC Graphics, Inc. v. Taylor Corp.* (1987), 154 Ill. App. 3d 283, 286, 507 N.E.2d 171.) As the circuit court traditionally decides the threshold issue of a particular grievance's arbitrability, the crucial question here is whether the Act divests the circuit court of its jurisdiction.

We begin by looking to the language of the Act. Nowhere does the Act specifically address the circuit court's jurisdiction to decide issues of arbitrability. Moreover, none of the unfair labor practices set forth in section 14 of the Act include a union's attempt to arbitrate an allegedly inarbitrable matter nor do they include a school board's refusal to submit to arbitration an allegedly inarbitrable matter. Although the Union argues that the School Board's refusal to submit to arbitration is an unfair labor practice, we do not interpret the provisions of section 14(a) as including a school board's refusal to arbitrate an allegedly inarbitrable grievance. Therefore, whether the dispute over arbitrability arises in the situation where a union attempts to ar-

bitrate an allegedly inarbitrable question or in the situation of a school board's refusal to submit to arbitration an allegedly inarbitrable matter is irrelevant since the Act makes neither circumstance an unfair labor practice. Moreover, even if section 14(a) does make it an unfair labor practice to refuse to submit to arbitration, it is arguable whether a school board's challenge to the arbitrability of a grievance could be considered a refusal to arbitrate.

■■ ■ Additionally, we recognize the similarity between this Act and the National Labor Relations Act (29 U.S.C.A. §151 *et seq.* (West 1973)) to the extent that they both designate certain unfair labor practices. (See *Board of Education v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, 202, 501 N.E.2d 338; see also Malin, *Implementing the Illinois Educational Labor Relations Act,* 61 Chi.[-]Kent L. Rev. 101 (1985).) We note that case law, decided under the NLRA, has determined that it is the court which should decide the arbitrability of a particular grievance. (See *United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347.) Essential to this determination is the recognition that an arbitrator's authority arises under a collective bargaining agreement and is necessarily limited by the terms of that agreement. (See *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1358, 1361.) Whenever a question arises that does not address the merits of a particular dispute, but, rather, is concerned with whether that dispute was intended to be arbitrated under a collective bargaining agreement, that is a question necessarily reserved for the court. An arbitrator is allowed to determine the arbitrability of a grievance, however, when the parties have mutually agreed to it. *Board of Education v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, 203, 501 N.E.2d 338, citing F. Elkouri & E. Elkouri, How Arbitration Works 213 (4th ed. 1985).

■ We are persuaded by this reasoning in interpreting the Act here. We do not believe the legislature intended to provide for collective bargaining agreements which could give rise to binding arbitration and, at the same time, divest the circuit court of its jurisdiction to decide the extent of the arbitrator's authority under such an agreement. There is simply nothing in the Act, or its legislative history, to support that conclusion.

We hold, therefore, that the circuit court retains its jurisdiction under the Act to decide the arbitrability of the parties' dispute under

the collective bargaining agreement. Because the circuit court has not yet ruled on the merits of whether the grievance at issue is arbitrable, it is inappropriate for this court to address the issue in this interlocutory appeal.

The next issue presented by the IELRB and the Union is whether the circuit court improperly enjoined the Union from proceeding with arbitration and the IELRB from proceeding with its hearing on the Union's unfair labor practice charge. In this respect, several arguments are raised. It is contended that the School Board failed to establish the necessary criteria governing the issuance of a preliminary injunction. Also, it is argued that our decision in *Board of Education v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, 501 N.E.2d 338, does not stand for the proposition that a circuit court could enjoin the IELRB from proceeding with an unfair labor practice hearing regarding an educational employer's improper refusal to arbitrate a grievance because no unfair labor practice charge was pending in that case. In an *amicus curiae* brief, filed by the Illinois Education Association-NEA, it is further maintained that the IELRB, a public agency, was improperly enjoined from proceeding to a hearing on the charge before it.

Generally, the party seeking a preliminary injunction or temporary restraining order is not required to make out a case which would entitle him to relief on the merits; rather, he need only show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382, 483 N.E.2d 1271.) The existence of a protectable interest in the plaintiff which will suffer irreparable harm if the injunction is not issued and the likelihood of the plaintiff's succeeding on the merits seem to be essential elements for the issuance of a preliminary injunction. (108 Ill. 2d at 387.) For there to be an adequate remedy at law, which will deprive equity of its power to grant injunctive relief, the remedy must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, 370 N.E.2d 223.

In the context of whether there is an agreement to arbitrate, however, section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102(b)) provides that the circuit court may stay an arbitration proceeding pending a resolution of the matter by the court. Nevertheless, the Uniform Arbitration Act does not provide the exclusive remedy for restraining arbitration, and an injunction to re-

strain arbitration may issue to determine whether the issue sought to be arbitrated is one which may be properly decided by an arbitrator. See *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 821, 426 N.E.2d 257; *Board of Trustees v. Cook County Teachers Union, Local 1600* (1974), 22 Ill. App. 3d 1053, 1055-56, 318 N.E.2d 197.

 We, therefore, view the trial court's decision to issue an injunction to stay arbitration as one which need not strictly meet the traditional criteria for the issuance of a preliminary injunction. Here, the School Board made a showing that the requested reinstatement of the teacher involved was a nondelegable duty and was not an issue subject to the collective bargaining agreement. Without expressing any opinion on the merits of that question, which has not yet been determined by the circuit court, we find no abuse of discretion in the issuance of the preliminary injunction to stay the Union from proceeding with arbitration. Generally, the discretion of the trial court to grant a preliminary injunction is broad, and, before a reviewing court will reverse the decision of the trial court, it would have to find a clear abuse of discretion. *People ex rel. Witte v. Big Creek Drainage District No. 2* (1987), 159 Ill. App. 3d 576, 580, 512 N.E.2d 62.

 While the IELRB and the Illinois Education Association-NEA essentially argue that the IELRB, as a public agency carrying out its duties mandated by law, should not be enjoined unless the IELRB was acting outside its authority or its official acts are unlawful (see *Sierra Club v. Kenney* (1980), 90 Ill. App. 3d 230, 234, 412 N.E.2d 970), we find the circumstances here are inapposite to that proposition. If, as we decided earlier, the circuit court has jurisdiction to determine whether the particular issue is arbitrable, then surely enjoining the IELRB from proceeding on a complaint founded upon a refusal to arbitrate this identical issue is proper. Generally, a court has the power to protect its prior rights to jurisdiction over a controversy, and for that purpose it may issue an injunction restraining a public agency in an administrative proceeding. (See *People ex rel. Scott v. Jones* (1970), 44 Ill. 2d 343, 348, 255 N.E.2d 397.) The injunction here preserves the status quo and prevents unnecessary litigation pending the decision of the trial court. We agree with the IELRB that in *Board of Education v. Rockford Education Association* (1985), 150 Ill. App. 3d 198, 501 N.E.2d 338, the appellate court did not decide the issue of whether the circuit court could enjoin the IELRB from proceeding with an unfair labor practice hearing. Nevertheless, we have the issue before us now and, for the foregoing reasons, determine there was no abuse of discretion in the issuance of the injunction against the IELRB on the particular facts presented.

The IELRB also cites to *Board of Education v. Compton* (1987), 157 Ill. App. 3d 439, 510 N.E.2d 508, *appeal allowed* (1987), 116 Ill. 2d 548, as support that a circuit court should not use its injunctive power against the IELRB. The *Compton* decision is inapposite to the facts here. There, the appellate court held that the circuit court lacked subject matter jurisdiction over actions seeking to *vacate* or *enforce* arbitration awards involving educational employers and unions representing teachers. (157 Ill. App. 3d at 441-44.) Without expressing our agreement or disagreement with that decision, we conclude that the issue decided in *Compton* is different from the issue of the circuit court's jurisdiction to determine arbitrability of a particular grievance.

For the foregoing reasons, we affirm the order of the circuit court enjoining the arbitration and the IELRB hearing.

Affirmed.

LINDBERG, P.J., and HOPF, J., concur.