THE BOARD OF EDUCATION OF COMMUNITY SCHOOL DISTRICT NO. 1, COLES COUNTY, Petitioner-Appellee, v. JEFFREY EARLE COMPTON et al., Respondents-Appellants.—THE BOARD OF EDUCATION OF COMMUNITY SCHOOL DISTRICT NO. 1, COLES COUNTY, Petitioner-Appellee, v. JEFFREY EARLE COMPTON et al., Respondents (The Illinois Educational Labor Relations Board, Intervenor and Respondent-Appellant).

Fourth District   Nos. 4—86—0427, 4—86—0475 cons.

Opinion filed June 25, 1987.

440

LUND, J., specially concurring.
GREEN, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, Imelda R. Terrazino, Assistant Attorney General, and Randi C. Hammer, of Chicago, of counsel), for appellant Illinois Educational Labor Relations Board.

Gregory J. Malovance, of Winston & Strawn, of Chicago, and Ralph H. Loewenstein, of Drach & Deffenbaugh, P.C., of Springfield, for appellants Jeffrey Earle Compton and Charleston Education Association.

Brian A. Braun, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellee.

Charles P. Rose and John R. Spitzig, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for amicus curiae.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:
Petitioner, board of education of Community School District No. 1 (District No. 1), and respondent, Charleston Education Association (Association), had entered into a collective-bargaining agreement in March 1984. Under this agreement District No. 1 recognized the Association as the exclusive bargaining representative of District No. 1's certified teaching personnel and the agreement provided certain procedures for the evaluation and termination of teachers and a grievance-arbitration procedure for resolving disputes concerning alleged violations of the agreement.

District No. 1 terminated Compton's employment as a teacher at the conclusion of the 1983-84 school year without following the requirements of the collective-bargaining agreement. Compton was a first-year nontenured teacher at the time of dismissal. The Association filed a written grievance on behalf of Compton contending a violation of the bargaining agreement. The grievance was submitted to binding arbitration and the arbitrator ruled in favor of the Association and Compton and ordered Compton reinstated with full back wages and other benefits.

District No. 1 refused to comply with the award and filed a petition to set aside and vacate the award in the circuit court. The Association and Compton petitioned the circuit court to confirm the award and enter judgment accordingly. Subsequently, both parties moved for summary judgment. The trial court granted summary judgment in favor of District No. 1 and vacated the arbitration award. The Association and Compton moved for a reconsideration of the trial court's judgment alleging lack of jurisdiction in the circuit court. The Illinois Educational Labor Relations Board (Board) filed a motion to intervene and a motion to dismiss or in the alternative to reconsider. The circuit court allowed the Board to intervene.

In June 1986, the circuit court denied the Association's motion for reconsideration and the Board's motion to dismiss or reconsider. The Association, Compton, and the Board filed a timely notice of appeal.

On appeal, Compton, the Association and the Board contend the circuit court lacked subject-matter jurisdiction over actions seeking to vacate or enforce arbitration awards involving educational employers and unions representing teachers. We agree.

In 1983, the Illinois Education Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 1071 through 1721) was enacted, becoming effective January 1, 1984. The Act was a major change in school labor law, permitting collective bargaining and allowing, with certain limitation, the right to strike. The policy stated for the enactment is set forth in section 1, and, in part, provides:

> "It is the public policy of this State and the purpose of this Act to promote orderly and constructive relationships between all educational employees and their employers. Unresolved disputes between the educational employees and their employers are injurious to the public, and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution." Ill. Rev. Stat. 1985, ch. 48, par. 1701.

We are aware, as is the general public, of the problem created by

the strikes affecting public education. In Illinois, such walkouts were illegal, being against public policy. The continuation of these strikes, often in violation of court orders, coupled with conflicts between interests in collective bargaining and issues of delegability, was of great concern to all and was the impetus for the legislative action. We must consider the reasoning for the enactment in determining the extent of its application.

The Illinois Educational Labor Relations Act provides for employee organizational rights and the selection of an employee representative. (Ill. Rev. Stat. 1985, ch. 48, par. 1703.) Employer rights, limiting certain areas from bargaining, and an obligation to "bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon" are created. (Ill. Rev. Stat. 1985, ch. 48, par. 1704.) The Board was established, given subpoena power, and mandated to "adopt, promulgate, amend or rescind rules and regulations in accordance with 'The Illinois Administrative Procedure Act' " (Ill. Rev. Stat. 1985, ch. 48, par. 1705(h)). The requirement of recognition of the bargaining agent is created (Ill. Rev. Stat. 1985, ch. 48, par. 1707), and the method of selection of the representative by secret election is provided (Ill. Rev. Stat. 1985, ch. 48, par. 1708). The duty to bargain collectively, to meet at reasonable times, to confer in good faith, and to execute a written agreement is provided (Ill. Rev. Stat. 1985, ch. 48, par. 1710).

Section 10(c) provides as follows:

"(c) The collective bargaining agreement negotiated between representatives of the educational employees and the educational employer shall contain a grievance resolution procedure which shall apply to all employees in the unit and shall provide for binding arbitration of disputes concerning the administration or interpretation of the agreement. The agreement shall also contain appropriate language prohibiting strikes for the duration of the agreement. The costs of such arbitration shall be borne equally by the educational employer and the employee organization." Ill. Rev. Stat. 1985, ch. 48, par. 1710(c).

Impasse procedures outline a course of mediation (Ill. Rev. Stat. 1985, ch. 48, par. 1712) which seeks to avoid the strikes allowed (Ill. Rev. Stat. 1985, ch. 48, par. 1713). Included within the specific list of unfair labor practices is the refusal "to comply with the provisions of a binding arbitration award" (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(8), (b)(6)). The procedure for handling an alleged unfair labor practice is established, providing for enforcement using the injunction

powers of the circuit courts (Ill. Rev. Stat. 1985, ch. 48, par. 1715). Review is through "the Appellate Court of the judicial district in which the Board maintains its principal office" (Ill. Rev. Stat. 1985, ch. 48, par 1716(a)), which happens to be this court. Provisions of the Act prevail and control over conflicts with any other law, executive order, or administrative regulation (Ill. Rev. Stat. 1985, ch. 48, par. 1717).

The Illinois Educational Labor Relations Act and the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1601 through 1627) were adopted in the same legislative session and attempted to provide "a comprehensive regulatory scheme for the public sector collective bargaining in Illinois." (*Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 530, 491 N.E.2d 1259, 1261-62.) The Illinois Public Labor Relations Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1608) provides for enforcement in accordance with the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, pars. 101 through 123). The Educational Labor Relations Act does not refer to the Uniform Arbitration Act but provides for enforcement through the Board (Ill. Rev. Stat. 1985, ch. 48, par. 1715).

Under the Uniform Arbitration Act, proceedings to compel arbitration, to stay arbitration, to seek vacation of an award, and to enforce an award, are through the circuit court. (Ill. Rev. Stat. 1985, ch. 10, pars. 102, 112, 114, 116.) The Illinois Educational Labor Relations Act does not provide for administrative review in the circuit court, providing only for review of Board action in the appellate court.

Thus, there are strong indications in the Illinois Educational Labor Relations Act's legislative history that courts were not intended to have jurisdiction under the Uniform Arbitration Act to vacate arbitration awards arising out of collective-bargaining agreements in public education. Had the legislature intended to incorporate the provisions of the Uniform Arbitration Act into the Educational Labor Relations Act, it could have used express language to that effect as it did in the Illinois Public Labor Relations Act.

We come to the conclusion that there is a legislative interest in streamlining the litigation proceedings governing public education. The advantage to educational employers and employees in having a statewide center of interpretations and decisions is obvious. If every circuit court can be used to question arbitration jurisdiction, necessarily interpreting the effect of the various terms of collective-bargaining agreements, there will be a lack of consistency. Early resolve of educational labor disputes will not be possible.

The statutory requirement calling for "a minimum of 5 years of

experience directly related to labor and employment relations in representing educational employers or educational employees in collective bargaining matters" (Ill. Rev. Stat. 1985, ch. 48, par. 1705(a)) when selecting Board members, provides an expertise hardly available to some 700 different trial judges from 102 different counties. The policy provision of the Illinois Educational Labor Relations Act recognizes the difference between educational employees and other employees and recognizes the need to minimize disputes. Unresolved disputes are called "injurious" (Ill. Rev. Stat. 1985, ch. 48, par. 1701). We come to the conclusion that all disputes which arise from the filing of grievances allegedly relating to violations of collective-bargaining agreements must be contested through the Board.

We recognize that the facts in this case present a jurisdictional question. Section 14(a)(5) of the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(5)) lists one of the unfair labor practices as:

> "(5) Refusing to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative; provided, however, that if an alleged unfair labor practice involves interpretation or application of the terms of a collective bargaining agreement and said agreement contains a grievance and arbitration procedure, the Board may defer the resolution of such dispute to the grievance and arbitration procedure contained in said agreement."

The employer questioning arbitration jurisdiction, relating to a specific grievance, may elect to refuse discussion and await a hearing before the Board or may go to the arbitrator, questioning jurisdiction, with the right to appeal the jurisdictional issue to the Board, and then to the appellate court. The statutory provision allowing the Board to first require arbitration is not unreasonable.

The absence of a provision in the Illinois Educational Labor Relations Act similar to section 12 in the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112) is not fatal to the position now taken by this court. Provisions similar to those of section 12, subparagraphs (a)(1), (2), (3), and (4) (Ill. Rev. Stat. 1985, ch. 10, pars. 112(a)(1), (2), (3), (4)) are necessarily included within the scope of review of the Board to provide necessary due-process protection in arbitration hearings.

We agree with the decision in *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 491 N.E.2d 1259,

that a decision contrary to the one we now enter would make many of the provisions of the Illinois Educational Labor Relations Act meaningless. We also agree it is for the appellate and supreme court exercising the power of judicial review to keep the Board within its jurisdiction.

For the reasons set forth, we concur with respondent's position that the circuit court lacked jurisdiction.

Reversed.

JUSTICE LUND, specially concurring:

I concur with the opinion of Justice Spitz. If the circuit courts were to review the issues set forth in section 12(a) of the Uniform Arbitration Act, or those established by common law, minimizing disputes would be hampered by unnecessary delay, thus frustrating one of the purposes of the Act. It is apparent, as indicated by the dissent, that the original legislation is lacking in certain particulars, but such does not justify judicial emasculation of the Act.

While the case now before us may not involve facts which would further the growth of a festering sore within the school system, the decision we make does create a precedent which will control fact situations that can lead to disruption in public education. History of labor law is argument for early determination of employee-employer disputes. The Illinois Educational Labor Relations Board, as stated in Judge Spitz's opinion and Judge Green's dissent, is created with built-in expertise. The speciality of the Board cannot be economically duplicated in the many judicial circuits.

With due deference to Judge Green's dissent, I agree that the legislative intent is appropriately recognized in the opinion of Judge Spitz. A fine tuning of the legislation is the responsibility of the General Assembly and can easily cure the problems Judge Green envisions.

JUSTICE GREEN, dissenting:

I disagree with my colleagues' determination that the circuit court of Coles County lacked jurisdiction to hear the instant matter. I conclude that the circuit court properly proceeded to rule on the merits of the issues before it. Accordingly, I dissent from the decision of the majority. Because the merits of the dispute may be before us later though a different route, I cannot properly address that issue at this time. This dissenting opinion will concern only the issue passed upon by the majority.

The thesis of the majority is that, although the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 1701 through .1721) did not expressly eliminate the previously used procedure whereby actions might be brought to vacate arbitration decisions arising from collective-bargaining agreements covering educational employers, employees and unions, it implicitly does so. The Act states that the refusal to comply with such an award is an unfair labor practice whether committed by an employer (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(8)) or by employees or their organizations (Ill. Rev. Stat. 1985, ch. 48, par. 1714(b)(6)). The majority's theory is that the Act envisions that those having a recognizable complaint against a decision should raise that issue by refusing to obey the award and then defend on that basis in proceedings brought before the Illinois Educational Labor Relations Board (Board) under section 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1715) charging them with an unfair labor practice.

At the outset, some discussion of the history and background of the circuit-court procedure in question is desirable. That is provided by the decision in *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199, which case is to be distinguished from *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 491 N.E.2d 1259, cited by the majority. The 1981 case was decided before the enactment of the Illinois Educational Labor Relations Act. There, the claim of a teacher for back salary was submitted to arbitration pursuant to a collective-bargaining agreement. The arbitrator awarded certain sums. The supreme court upheld a circuit court's subsequent dismissal, on motion, of a complaint by the school board seeking to vacate the award. The supreme court recognized that a circuit court could properly hear such a case but agreed with the trial court that it was apparent from the fact of the record that the school board was not entitled to relief.

The importance to us of the foregoing decision was the recognition that an action to challenge the award existed. Also significant was the statement of that court that, because of the provisions of section 12(e) of the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, par. 112(e)), the criterion by which the arbitrator's award was to be examined was not that set forth in the Uniform Arbitration Act, but rather was that existing in the common law before enactment of that legislation. The grounds for attacking such an award at common law were stated to be "fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration" (*Board of Education v. Chicago Teacher's Union Local No. 1* (1981), 86 Ill. 2d 469, 474,

427 N.E.2d 1199, 1201). The case of *White Star Mining Co. v. Hultberg* (1906), 220 Ill. 578, 77 N.E. 327, was cited.

At the time of the foregoing supreme court decision, as now, section 12(e) of the Uniform Arbitration Act stated:

"Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a *collective bargaining agreement*; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 10, par. 112(e).

Then, as now, section 12(a) of the Uniform Arbitration Act stated:

"Vacating an award. (a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by the circuit court is not ground for vacating or refusing to confirm the award." Ill. Rev. Stat. 1977, ch. 10, par. 112(a).

As indicated by the majority, section 8 of the Illinois Public Labor Relations Act states "[t]he grievance and arbitration provisions of any collective bargaining agreement shall be subject to the Illinois 'Uniform Arbitration Act' " (Ill. Rev. Stat. 1985, ch. 48, par. 1608). Thus, the apparent intent of that legislation was to change the remedy for vacating, modifying or correcting an arbitration award arising from a collective-bargaining agreement covered thereby from the common law remedy, as stated by section 12(e) of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112(e)) to that set forth in section

12(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)). Here, under the Illinois Educational Labor Relations Act, in the absence of any similar change, the common law remedy would remain, unless, as the majority maintains, that remedy was implicitly eliminated.

Most of the basis for the majority's inference that the procedure for seeking to vacate an arbitration award arising from a covered collective-bargaining agreement is that to do so would be consistent with the worthy purposes of the Act and its comprehensive scheme. Several factors prevent me from drawing the same inference.

The suggested procedure that the loser before an arbitrator can raise the traditional attack on the decision by refusing to obey the decision and then attacking the decision when proceedings are brought before the Board charging an unfair labor practice cannot be used when the decision does not require the loser to do anything. For instance, if a teacher's claim for back salary is submitted to arbitration and the teacher loses under circumstances whereby he or she traditionally could seek vacation of the decision, that teacher cannot reasonably commit an act which would violate the decision and raise the issue of whether the refusal to obey the decision was an unfair labor practice.

I have an abhorrence of expanding the situations in which it is necessary for parties, in order to test the propriety of an order of a court or agency, to defy that order and subject themselves to a charge of contempt or other misconduct such as the commission of an unfair labor practice. This procedure is sometimes necessary, but this court has described it as a "distasteful method" in the case of *In re M.B.* (1985), 137 Ill. App. 3d 992, 995, 484 N.E.2d 1154, 1157. Requiring such a procedure does nothing to further the stated policy of promoting an orderly "relationship between" the parties. (Ill. Rev. Stat. 1985, ch. 48, par. 1701.) I cannot easily infer that the legislature intended to provide for such a procedure.

The majority sees no problem arising from determining the criterion by which the decision of an arbitrator may be attacked. However, prior legislators have apparently deemed that there are some differences between the criteria recognized at common law and those designated in section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112) or else they would not likely have voted to have the common law criterion retained when the arbitration concerns a collective-bargaining agreement.

Article VI, section 9 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, sec. 9) states that, with exceptions not applicable here,

"[c]ircuit courts shall have original jurisdiction of all justiciable matters." The remedy seeking vacation of an arbitration decision which the majority would deem to have been rendered nonjusticiable by implication is not the statutory remedy of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 101 *et seq.*) but the common law remedy as described in *Board of Education of Chicago v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199. While I concede that the legislature can destroy a common law remedy, we should require a stronger inference to destroy a common law remedy than to replace one statutory remedy with another.

I do not dispute the worthy purpose of the Act, its intent to make expertise available for the solving of the serious problems involved nor its intent to channel many proceedings through tribunals which would have an opportunity to acquire familiarity with those problems. However, I cannot infer that the legislature intended, without saying so, to (1) deprive those subject to arbitration decisions that merely denied them relief and did not require them to do anything, from any available procedures to test the decisions, (2) require others wishing to test the decisions of the arbitrator to defy the decision, and (3) destroy a time-honored common law remedy.

The action of the legislature in making arbitration decisions under the Illinois Public Labor Relations Act subject to the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 48, par. 1608) while making no similar provision in the Illinois Educational Labor Relations Act does not necessarily indicate an intention to eliminate procedures in the circuit court to test arbitration decisions under the Act. The legislature could just as well have intended that, under the Illinois Labor Relations Act, such decisions were to be subject to the Uniform Arbitration Act rather than, as previously, under the common law, while such decisions under the Act should continue to be tested under the common law.

Because of the frailty of the inference drawn by the majority, I dissent.