BOARD OF TRUSTEES, PRAIRIE STATE COLLEGE, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.—DE KALB COMMUNITY UNIT SCHOOL DISTRICT 428, Petitioner, v. DE KALB CLASSROOM TEACHERS ASSOCIATION, LOCAL 4328, IFT-AFT, AFL-CIO, *et al.*, Respondents.

Fourth District   Nos. 4—87—0472, 4—87—0505 cons.

Opinion filed July 26, 1988.

David P. Kula and Linda L. Eyestone, both of Scariano, Kula, Ellch, & Himes, Chartered, of Chicago Heights, for petitioner Board of Trustees, Prairie State College.

Robert H. Ellch and Linda L. Eyestone, both of Scariano, Kula, Ellch & Himes, Chartered, of Chicago Heights, for petitioner' De Kalb Community Unit School District 428.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, William D. Frazier, Assistant Attorney General, and Randi Hammer Abramsky, of Illinois Educational Labor Relations Board, all of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for respondent Prairie State Federation of Teachers.

J. Dale Berry, of Cornfield & Feldman, of Chicago, for respondent De Kalb Classroom Teachers Association.

JUSTICE SPITZ delivered the opinion of the court:

The principal question involved in these consolidated appeals is whether the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 1701 through 1721) divests the circuit court of its traditional jurisdiction to determine the arbitrability of educational labor disputes and instead vests such jurisdiction exclusively in the Illinois Educational Labor Relations Board (Board). Additional issues argued on appeal are (1) whether, assuming the Board has exclusive jurisdiction to determine arbitrability, the arbitrability issue must be resolved before a dispute is arbitrated; (2) whether an educational employer's refusal to arbitrate an employee grievance is an unfair labor practice within the meaning of the Act; (3) whether the labor disputes which precipitated the present proceedings are inarbitrable in view of either the language of the applicable collective-bargaining agreements or the doctrine that the discretionary powers of school boards may not be delegated; (4) whether the Board impermissibly created a new unfair labor practice in holding in a decision entered in a contested case that an educational employer's refusal to arbitrate an employee grievance constitutes an unfair labor practice, without having previously promulgated an administrative rule to that effect; and (5) whether the Board's executive director may issue a complaint charging an educational employer with an unfair labor practice.

Cause No. 4—87—0472 involves an alleged violation of a collective-bargaining agreement between Prairie State College (Prairie State) and the Prairie State Federation of Teachers Local 3816, IFT-AFT, AFL-CIO (Federation). The agreement became effective August 21, 1984, and terminated at the end of Prairie State's 1987 summer session.

In March 1986, Prairie State adopted a resolution honorably dismissing Lee Albrecht (Albrecht) and Al Bieker (Bieker) from employment as faculty members at the end of the 1985-86 school year. Albrecht filed a grievance pursuant to the collective-bargaining agreement between the Federation and Prairie State, alleging his dismissal violated, *inter alia*, the layoff procedures set forth in the agreement. He requested "[r]einstatement of my full-time faculty position at PSC." Bieker filed a similar grievance and likewise requested reinstatement to his faculty position.

With respect to layoff procedure, section 4.31 of the applicable

collective-bargaining agreement provides:

> "The reduction in force of faculty members shall be in accordance with the provisions of Chapter 122, Section 103—B5, Illinois Revised Statutes."

Section 3B—5 of the Public Community College Act provides:

> "If a dismissal of a faculty member for the ensuing school year results from the decision by the Board [of trustees of a community college district] to decrease the number of faculty members employed by the Board or to discontinue some particular type of teaching service or program, notice shall be given to the affected faculty member *** together with a statement of honorable dismissal and the reason therefor; provided that the employment of no tenured faculty member may be terminated under the provisions of this Section while any probationary faculty member, or any other employee with less seniority, is retained to render a service which the tenured employee is competent to render." Ill. Rev. Stat. 1985, ch. 122, par. 103B—5.

Section 7.1 of article VII of the collective-bargaining agreement defines a grievance as: "a difference of opinion with respect to the meaning or application of the terms of this Agreement." The agreement prescribes a four-step grievance procedure. The final step is binding arbitration.

Prairie State denied both Bieker's and Albrecht's grievances, and the Federation on April 4 and April 7, 1986, demanded that the disputes be submitted to binding arbitration. Prairie State refused on grounds that (1) it never agreed to arbitrate grievances seeking reinstatement of an employee; and (2) such an agreement, if made, is void and unenforceable because arbitrators do not have authority to grant the remedy of reinstatement in the educational labor sector.

On May 1, 1986, the Federation filed an unfair labor practice charge with the Illinois Educational Labor Relations Board, alleging that Prairie State's refusal to arbitrate Albrecht's and Bieker's grievances violated sections 14(a)(1) and 14(a)(5) of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5)). The Board issued a complaint, and the hearing officer referred the matter directly to the Board for determination. (80 Ill. Adm. Code 1120.40(f) (1985).) On June 17, 1987, the Board issued an opinion and order finding Prairie State's refusal to proceed to arbitration violated sections 14(a)(1) and 14(a)(5) of the Act. (*Prairie State College*, 3 Pub. Employee Rep. (Ill.) par. 1077, case No. 86—CA—0027—C (Illinois Educational Labor Relations Board, June 17, 1987).) The Board ordered Prairie State to submit Bieker's and Albrecht's grievances to binding arbitration.

Prairie State filed a petition for review of the Board's order on July 14, 1987.

While the above proceedings were taking place before the Board, there was also a parallel proceeding in the circuit court. On July 3, 1986, Prairie State filed in the Cook County circuit court a complaint naming as defendants the Federation, the Board, Albrecht, and Bieker. The complaint requested (1) a stay of arbitration pursuant to section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 102) on the ground that Bieker's and Albrecht's grievances are inarbitrable; (2) a declaratory judgment to the effect that the Board is without jurisdiction to compel Prairie State to submit the grievances to arbitration and has no jurisdiction to investigate and issue a complaint as to the Association's unfair labor practice charge; and (3) a preliminary and permanent injunction enjoining the Board from proceeding on the Association's unfair labor practice charge. On December 8, 1986, the circuit court granted the defendants' motions to dismiss on the ground that it lacked subject-matter jurisdiction, because the legislature has designated the Board as the expert agency to hear "these types of disputes via unfair labor practices." Prairie State appealed the circuit court's decision, and its appeal is presently pending in the First District of this court as cause No. 1—86—3527.

Cause No. 4—87—0505 arose out of alleged violations of a collective-bargaining agreement entered into by the De Kalb Classroom Teachers' Association, Local 4328, IFT-AFT, AFL-CIO (Association), and De Kalb Community Unit School District 428 (district). The contract covered the period August 27, 1984, through March 30, 1985.

At the beginning of February 1985, the district posted a district-wide certified staff seniority list for the purpose of determining priority of entitlement to teaching positions in the event of a reduction in the number of teaching positions. The parties stipulated that several of the names on the seniority list were those of administrators which the collective-bargaining agreement excluded from the bargaining unit which the Association represented. The administrators were placed on the list on the basis of a system of strict district seniority.

On February 21, 1985, the Association filed grievance No. 1984—4, alleging that the district's seniority list failed to conform to the terms of the collective-bargaining agreement. Specifically, the grievance alleged that the Board violated articles I, XXVI, and XXVIII of the agreement. Article I provides that the Association is the exclusive bargaining agent for "all certified teachers, nurses, social workers, and specialists" employed by the district. Supervisory personnel are not, however, included in the bargaining unit.

Article XXVI of the agreement provides in part:

"2) If it becomes necessary to remove or dismiss teachers on contractual continued service, such teachers shall be honorably dismissed according to the following criteria:

a) Teachers with ten (10) or more years of continuous service in District No. 428 prior to the reduction or dismissal shall be considered exempt from any reduction or dismissal whatsoever.

b) Teachers with less than ten (10) years of experience in District No. 428 shall be reduced or dismissed in reverse order of total continuous years experience within District No. 428, with lower years of experience being reduced or dismissed first within teaching categories.

c) For the purposes of establishing years of experience, teachers will be placed within certified/qualified teaching categories on the basis of current assignment or assignments within the previous five (5) years prior to the year of reduction or dismissal."

Article XXVIII provides:

"Any rights, benefits or responsibilities relating to teachers which are under the school code of the State of Illinois or are under other laws and regulations, and which exceed or supplement benefits accorded teachers elsewhere in this Agreement shall be incorporated into and become a part of this agreement.

This section in no way mandates the adoption of permissive school code language."

The Association claimed article XXVI requires the district to place both administrators and teachers on the seniority list in accordance with the criteria set forth therein.

Article V of the collective-bargaining agreement between the Association and the district contains a grievance procedure. That article defines a grievance as "any claim by a teacher or Association that there has been a violation, misinterpretation or misapplication of the terms of this Agreement." The grievance process culminates in binding arbitration, after passing through three preliminary steps.

Grievance 1984—4 was processed through step three of the grievance procedure established by the collective-bargaining agreement. On November 26, 1985 (following the conclusion of the first three steps of the grievance process), the president of the district's board of education, Helen Traglia, wrote Jerry Miller, the Association's grievance chairperson, that the district had denied that portion of grievance No. 1984—4 "regarding the rights of administrators concerning seniority

and reduction in force." Traglia also stated that the district had to deny the Association's request to expedite arbitration because "[i]n the Board of Education's opinion, this matter is not a proper subject for arbitration."

On December 16, 1985, the Association's attorney wrote to the American Arbitration Association (AAA), requesting that a panel of arbitrators be supplied so that an arbitrator could be selected to hear and determine grievance No. 1984—4. On December 23, 1985, counsel for the district wrote to the AAA stating that it had filed a complaint in the circuit court of De Kalb County seeking a stay of arbitration and that "there is no need for you to supply a panel of arbitrators at this time." On July 31, 1986, the circuit court dismissed the district's complaint which requested a stay of arbitration. (De Kalb County cause No. 85—MR—87.) The district continued, however, to refuse to submit the Association's grievance to arbitration.

Meanwhile, on January 17, 1986, the Association filed an unfair labor practice charge against the district, alleging that the district's refusal to submit grievance No. 1984—4 to binding arbitration in accordance with the collective-bargaining agreement's grievance procedure constituted an unfair labor practice under the Act. The Board issued a complaint against the district, and the hearing officer referred the matter directly to the Board for determination. 80 Ill. Adm. Code 1120.40(f) (1985).

On June 30, 1987, the Board issued an opinion and order, in which it found that the district's refusal to proceed to arbitration (1) violated section 14(a)(1) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(1)), which prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act," and (2) violated section 14(a)(5) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(5)), which generally prohibits educational employers from refusing to engage in good-faith collective bargaining with employee representatives. (*De Kalb Community Unit School District 428*, 3 Pub. Employee Rep. (Ill.) par. 1107, case No. 86—CA—0004—C (Illinois Educational Labor Relations Board, June 30, 1987).) The Board ordered the district to submit grievance No. 1984—4 to binding arbitration.

The district filed a petition for review of the Board's order on July 27, 1987.

In both of the orders from which these appeals were taken, the Board implied that it has exclusive jurisdiction to determine the arbitrability of employee grievances in the educational labor sector, and that actions to compel or enjoin arbitration filed in the circuit court

are no longer a proper means of determining the arbitrability of educational labor grievances. The petitioners contend that the Act does not abolish the right to a circuit court determination of the issue of an educational labor dispute's arbitrability prior to arbitration. They assert that in the educational labor context, the circuit court should have exclusive jurisdiction to determine the arbitrability of disputes, just as the circuit court has exclusive jurisdiction to determine the arbitrability of disputes in other *fields*. The petitioners point out that the circuit court has considerable expertise in determining the arbitrability of disputes involving a wide range of subject matter.

■■ As the petitioners note, the issue of the arbitrability of labor disputes has traditionally been held to be a matter for decision by the courts prior to arbitration. Federal courts have arrived at this conclusion in cases arising under Federal legislation governing labor relations (*AT&T Technologies, Inc. v. Communications Workers* (1986), 475 U.S. 643, 89 L. Ed. 2d 648, 106 S. Ct. 1415; *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347), and prior to enactment of the Illinois Educational Labor Relations Act, Illinois courts routinely determined the arbitrability of labor disputes in the educational labor sector. See, *e.g.,* *Board of Trustees of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600* (1980), 87 Ill. App. 3d 246, 408 N.E.2d 1026.

However, this court, as well as the First and Fifth Districts of the Appellate Court, have held that in enacting the Illinois Educational Labor Relations Act, the legislature intended to establish a new regulatory scheme with respect to arbitration of educational labor disputes, which is not subject to the practices or precedents which have traditionally governed arbitration of labor disputes. (*Board of Education of Community School District No. 1 v. Compton* (1987), 157 Ill. App. 3d 439, 510 N.E.2d 508, *aff'd* (1988), 123 Ill. 2d 216, 526 N.E.2d 149; *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 491 N.E.2d 1259; *Board of Education, Benton Consolidated School District No. 47 v. Benton Federation of Teachers, Local No. 1956* (1988), 165 Ill. App. 3d 514, 518 N.E.2d 1257; contra *Board of Education of Warren Township High School District No. 121 v. Warren Township High School Federation of Teachers* (1987), 162 Ill. App. 3d 676, 515 N.E.2d 1331, *appeal allowed* (1988), 119 Ill. 2d 554, 522 N.E.2d 1241.) Two additional appellate court decisions (*Board of Education of Rockford School District No. 205 v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, 501 N.E.2d 338, and *Board of Trustees of Community Colleges District 508 v. Cook*

*County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617, 487 N.E.2d 956) also hold that the Illinois Educational Labor Relations Act did not divest the circuit court of its traditional jurisdiction to determine the arbitrability of labor disputes in the educational labor sector. In *Compton* (123 Ill. 2d 216, 526 N.E.2d 149), the supreme court overruled these two opinions to the extent they are inconsistent with its decision.

In *Compton*, this court specifically stated, "We come to the conclusion that all disputes which arise from the filing of grievances allegedly relating to violations of collective-bargaining agreements must be contested through the Board." (*Compton*, 157 Ill. App. 3d at 444, 510 N.E.2d at 511.) In affirming this court's decision in *Compton*, the supreme court stated:

> "[W]e need not discuss appellant's contention that its decision to fire Compton was a matter of inherent managerial policy, involved a nondelegable statutory duty, or was for any other reason not subject to arbitration. (*Cf. City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219.) The responsibility for determining the merits of these claims belongs, in the first instance, to the Board." *Compton*, 123 Ill. 2d at 226, 526 N.E.2d at 154.

Likewise, in *Benton Consolidated School District*, the court stated:

> "Contrary to the circuit court's pronouncements otherwise, it has no jurisdiction to determine whether a particular matter [involving educational labor relations] is arbitrable.
>
> *** [T]he legislature intended that the Board have exclusive primary jurisdiction subject to review by the Appellate Court ***." *Benton Consolidated School District*, 165 Ill. App. 3d at 521-22, 518 N.E.2d at 1262.

The petitioners point out that *Compton* was an appeal from a circuit court order which vacated an arbitration award, while the present cases are appeals from decisions of the Board ordering the parties to proceed with arbitration prior to determination of the arbitrability of the underlying grievances. The principal issue involved in both *Compton* and in the present cases is the same. All of these cases present the question of whether the Board or the circuit courts of 102 counties should have initial responsibility for determining the arbitrability of employee grievances in the educational labor relations area and for the interpretation of the relevant portions of educational labor contracts.

It cannot be gainsaid that many circuit court judges have some experience in determining the arbitrability of labor disputes. But the members of the Board, all of whom must have a "minimum of 5 years of experience directly related to labor and employment relations in representing educational employers or educational employees in collective bargaining matters" (Ill. Rev. Stat. 1985, ch. 48, par. 1705(a)), undoubtedly possess a greater degree of expertise in the interpretation of educational labor contracts than do most circuit court judges. Although after July 1, 1988, Board decisions will also be reviewable by appellate courts of any judicial district in which the Board maintains an office (Ill. Rev. Stat. 1987, ch. 48, par. 1716), the Board members' expertise in educational labor matters will nevertheless continue to make for greater uniformity in decisions in this area than would prevail if circuit court judges initially determined the arbitrability of educational labor disputes.

The petitioners also argue that the Board's having exclusive jurisdiction to determine the arbitrability of educational labor disputes will leave educational employees who file grievances without remedies in situations where the arbitrators determine that the grievances are inarbitrable. This is an interesting argument, but it is not presented by the facts of this case. Therefore, we will not consider it in this opinion. *Cf. Compton,* 123 Ill. 2d at 225-26, 526 N.E.2d at 154.

The petitioners also argue that because the Act does not *expressly* abolish the common law right to a judicial determination of the arbitrability of educational labor relations disputes before arbitration proceeds, this right has survived adoption of the Act. We disagree.

The legislature indicated that it is the purpose of the Act to regulate, *inter alia,* "resolution of disputes arising under collective bargaining agreements." (Ill. Rev. Stat. 1985, ch. 48, par. 1701.) Clearly, a claim that a dispute is arbitrable under terms of a collective-bargaining agreement arises under such an agreement, and the Act does not prescribe circuit court determination of a dispute's arbitrability as one of the means of regulating disputes arising under collective-bargaining agreements. Moreover, sections 14(a)(5) and 15 of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(5), 1715) indicate the Board must adjudicate unfair labor practice charges involving alleged refusals to engage in good-faith collective bargaining which involve interpretation or application of the terms of a collective-bargaining agreement, after permitting arbitration of the dispute, if the Board desires that the matter first be arbitrated. Finally, the provisions of the Act prevail and control in the event of a conflict with other laws. Ill. Rev. Stat. 1985, ch. 48, par. 1717.

The legislature may abolish any portion of the common law. (*Nardi v. Segal* (1967), 90 Ill. App. 2d 432, 234 N.E.2d 805.) In enacting the above statutory provisions, the legislature intended to implement a new regulatory scheme, covering the entire subject of arbitration of educational labor disputes. (See *Compton*, 157 Ill. App. 3d 439, 510 N.E.2d 508.) It follows from our analysis in *Compton* that in so doing, the legislature impliedly repealed the right to circuit court determination of the arbitrability of educational labor disputes. This action was clearly within the legislature's powers. (See 15A C.J.S. *Common Law* §12, at 55-56 (1967).) Our conclusion with respect to this issue is in harmony with the supreme court's opinion which affirmed our decision in *Compton* (157 Ill. App. 3d 439, 510 N.E.2d 508, *aff'd* (1988), 123 Ill. 2d 216, 526 N.E.2d 149).

■ The petitioners further assert that if the Board has exclusive jurisdiction to determine the arbitrability of educational labor disputes, the Board should be required to resolve the arbitrability issue before arbitration proceeds. They contend a contrary rule, under which a dispute might be arbitrated only to have it later determined that it is inarbitrable, would entail a needless waste of taxpayers' money. They also assert a holding that the Board need not initially determine the arbitrability issue would require an educational employer to incur the risk of being found guilty of an unfair labor practice in order to obtain review of the issue of a dispute's arbitrability.

In *Compton*, this court held that "[t]he statutory provision allowing the Board to first require arbitration is not unreasonable." (*Compton*, 157 Ill. App. 3d at 444, 510 N.E.2d at 512.) None of the arguments advanced by the petitioners persuade us to alter this holding.

As recognized by the supreme court in *Compton* (123 Ill. 2d at 225, 526 N.E.2d at 154), the necessity of committing an unfair labor practice in order to obtain review of an arbitrator's decision is a consequence which flows from the structure of the Act. This method of review is not uncommon in labor law and conforms the Act's stated goal of minimizing disputes and encouraging arbitration.

It is true that requiring arbitration prior to a determination of arbitrability would in some cases result in the arbitration of disputes which should never have been arbitrated. However, requiring arbitration before arbitrability is determined will also prevent some cases from appearing before the Board twice. An analogy can be drawn to the practice which obtains with respect to orders denying motions to dismiss in civil actions in the circuit court. The policy which generally prevents appellate court review of such orders prior to conclusion of the circuit court proceedings results in trials being held in at least

some civil actions which should never have been tried. Yet the disadvantages which would result from permitting immediate appeal of orders denying motions to dismiss are deemed to outweigh the adverse effects of permitting trials in some cases which should not have been tried. The legislature and the Board have made a similar judgment with respect to prearbitration review of the arbitrability issue in educational labor disputes, and we will not disturb that judgment.

The petitioners also take issue with the Board's finding that refusal to arbitrate an employee grievance constitutes an unfair labor practice within the meaning of sections 14(a)(1) and 14(a)(5) of the Act. Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5).

In holding that a refusal to submit a grievance to arbitration violates section 14(a)(1) of the Act, the Board observed that section 10(c) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c)) mandates that collective-bargaining agreements include a grievance resolution procedure which provides for binding arbitration of disputes concerning administration or interpretation of the agreement. On this basis, the Board concluded that the right to obtain adherence to collective-bargaining agreements through the grievance arbitration process is one of the rights guaranteed to educational employees under the Act, "since the integrity of the collective-bargaining process and the executed agreement depends on the ability of the parties to enforce their agreement." Therefore, an employer's refusal to arbitrate grievances in accordance with a collective-bargaining agreement " 'interfer[es with], restrain[s], or coerce[s]' " employees in the exercise of their rights to engage in collective bargaining.

As its basis for concluding the petitioners' refusals to arbitrate constituted refusals to engage in good-faith collective bargaining within the meaning of section 14(a)(5) of the Act, the Board observed that the duty to bargain is not limited to negotiation of labor contracts but instead extends to interpretation, administration and enforcement of the agreements. Thus grievance arbitration is a fundamental part of the collective-bargaining process, and a refusal to submit a grievance to arbitration constitutes a refusal to engage in good-faith collective bargaining. The Board concluded that in view of the legislative intent that enforcement of the new regulatory scheme regarding educational labor relations be vested in one administrative agency, an unfair labor practice charge filed with the Board is the appropriate method of obtaining redress for a refusal to submit a grievance to arbitration.

The petitioners contend there is nothing in the language of sections 14(a)(1) and 14(a)(5) of the Act which supports a holding that a

refusal to arbitrate a grievance is an unfair labor practice. Specifically, the petitioners assert that in the absence of a requirement that every educational labor dispute be submitted to arbitration, they cannot be guilty of restraining or interfering with employees in the exercise of their rights guaranteed by the Act. They contend that if the legislature had intended to make refusal to arbitrate a grievance an unfair labor practice under section 14(a)(5), it would have specified in that section that a refusal to arbitrate a grievance is an unfair labor practice instead of or in addition to the mere refusal to discuss grievances. The petitioners further maintain that an educational employer who refuses to arbitrate because of a good-faith belief a grievance is inarbitrable should not be found guilty of an unfair labor practice. They note that when they refused to arbitrate the present grievances, there existed appellate court decisions holding that the Act does not abrogate the right to circuit court determination of the arbitrability of educational labor disputes.

■ The relevant statutory provisions support the conclusion that a refusal to submit an employee grievance to arbitration is an unfair labor practice within the meaning of section 14(a)(1) of the Act. Section 10(c) of the Act requires collective-bargaining agreements between educational employers and employees to contain a grievance resolution procedure which shall "provide for binding arbitration of disputes concerning the administration or interpretation of the agreement." (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c).) By making this a mandatory term of all educational labor contracts, the legislature extended entitlement to binding arbitration of disputes concerning interpretation or administration of educational sector collective-bargaining agreements to all employees subject to such agreements. It follows that binding arbitration of all disputes concerning administration or interpretation of collective-bargaining agreements is one of the rights guaranteed by the Act. Section 14(a)(1) provides that an educational employer commits an unfair labor practice in "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(1).) An employer's refusal to arbitrate a grievance obviously interferes with and restrains a grievant in the exercise of a right guaranteed under the Act within the meaning of section 14(a)(1).

■ In conformity with our recent decision in *Board of Education v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 490, 524 N.E.2d 711, we hold, however, that refusal to arbitrate an educational labor dispute does not constitute an unfair labor practice within the meaning of section 14(a)(5). Such an interpretation of that

section would torture the meaning of its words. This interpretation of section 14(a)(5) is not necessary in order to provide a remedy for a refusal to arbitrate, because section 14(a)(1) provides a fully adequate remedy for such refusals. The situation presented by this case is unlike that which obtains in similar cases which are governed by the National Labor Relations Act (29 U.S.C. §151 *et seq.* (1982)), which does not require that collective-bargaining agreements include a grievance resolution procedure which provides for binding arbitration of disputes concerning administration or interpretation of the agreements. (See 29 U.S.C. §157, 158(a), (d) (1982).) The Board's holding that a refusal to arbitrate constitutes an unfair labor practice under both sections 14(a)(1) and 14(a)(5) of the Act amounts to the impermissible imposition upon employers of a double penalty for seeking the only available remedy for questioning the arbitrability of an educational labor dispute. For these reasons, we reverse the Board's decisions that refusal to arbitrate an employee grievance constitutes an unfair labor practice within the meaning of section 14(a)(5) of the Act.

■■ As the petitioners point out, there existed at the times of their refusals to arbitrate the grievances here at issue at least two appellate court decisions (*Monmouth Public Schools v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100, and *Board of Trustees of Community Colleges District 508 v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617, 487 N.E.2d 956) which held the right to circuit court determination of the arbitrability of educational labor disputes survived adoption of the Act. To this extent, the record supports petitioners' positions that they were found guilty of unfair labor practices on the basis of their good-faith reliance on prior decisions of this court, which would render any unfair labor practices on their parts mere technical violations of the Act.

Contrary to the decision of the court in *District 508*, however, both the Board and this court have concluded that the Act abolished the right to circuit court determination of the arbitrability of educational labor disputes. With the possible exception of situations where the Board explicitly chooses to defer resolution of an unfair labor practice charge until after arbitration of a grievance (a situation not here present), a finding by the Board that an unfair labor practice has occurred is essential to the Board having the power to order the parties to submit their dispute to arbitration and to take other remedial action. (See Ill. Rev. Stat. 1985, ch. 48, par. 1715.) Thus our vacating or reversing the Board's findings that petitioners violated section 14(a)(1) of the Act would remove the sole basis for the Board having power to order petitioners to take remedial actions with respect to

their refusals to arbitrate.

■ We recognize that Federal decisions in the labor relations area hold that evidence of prior unfair labor practices may be deemed relevant in determining the motivation underlying an employer's subsequent conduct. (See, *e.g.*, *Maphis Chapman Corp. v. NLRB* (4th Cir. 1966), 368 F.2d 298.) But in determining the weight to be accorded prior unfair labor practices, one should look beyond the mere fact that an employer was previously adjudged guilty of unfair labor practices and consider the specific facts and circumstances of the underlying conduct. (See *NLRB v. Citizens Hotel Co.* (5th Cir. 1964), 326 F.2d 501.) We trust this procedure will be followed if the findings that petitioners violated section 14(a)(1) of the Act are ever claimed to be relevant to whether petitioners engaged in other unfair labor practices.

■ The petitioners further maintain the Board does not have the power to make refusal to submit a grievance to arbitration an unfair labor practice, because administrative agencies do not have authority to add to or expand the coverage of statutes through use of their rulemaking powers. The petitioners further contend that assuming, *arguendo*, the Board does have authority to create a new unfair labor practice by rule, the Board's holding that refusal to submit a grievance to arbitration is an unfair labor practice must be reversed, because of the Board's failure to comply with sections 4, 5.01, and 6 of the Illinois Administrative Procedure Act (APA) (Ill. Rev. Stat. 1985, ch. 127, pars. 1004, 1005.01, 1006) in promulgating this policy.

In holding that a refusal to submit a grievance to arbitration is an unfair labor practice, the Board did nothing more than interpret the term "rights guaranteed under this Act" contained in section 14(a)(1) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(1)). Moreover, section 15 of the Act specifically grants the Board power to adjudicate unfair labor practice charges. Ill. Rev. Stat. 1985, ch. 48, par. 1715.

A legislative grant of power to an administrative agency includes the power to do all that is reasonably necessary to exercise the power granted. (*City of Chicago v. State & Municipal Teamsters* (1984), 127 Ill. App. 3d 328, 468 N.E.2d 1268.) The legislative grant of power to the Board to adjudicate unfair labor practice charges necessarily conferred on the Board the power to interpret the Act in order to determine what actions constitute unfair labor practices. We therefore hold that the Board did not improperly expand the scope of the Act's coverage in holding that refusal to arbitrate an employee grievance constitutes an unfair labor practice.

■ We also find no merit in petitioners' contentions that the Board acted improperly in declaring through an adjudicatory decision

rather than through adoption of an administrative rule that refusal to arbitrate an employee grievance is an unfair labor practice. As the petitioners point out, the APA defines "[r]ule" as a "statement of general applicability that implements, applies, interprets, or prescribes law or policy," subject to certain exceptions not here relevant. (Ill. Rev. Stat. 1985, ch. 127, par. 1003.09.) In order to validly adopt rules, administrative agencies must comply with the public notice and comment requirements set out in section 5.01 of the APA (Ill. Rev. Stat. 1985, ch. 127, par. 1005.01) and must file the rules in the office of the Secretary of State (Ill. Rev. Stat. 1985, ch. 127, par. 1006). It is undisputed that the Board did not comply with any of these procedures in holding that an educational employer's refusal to arbitrate a grievance involving administration or interpretation of a collective-bargaining agreement constitutes an unfair labor practice.

However, petitioners' argument as to this point overlooks the fact that adjudicated cases may serve as vehicles for the formulation of agency policies which are applied and announced therein. In announcing policies in this manner, administrative agencies do not engage in rulemaking. *NLRB v. Wyman-Gordon Co.* (1969), 394 U.S. 759, 22 L. Ed. 2d 709, 89 S. Ct. 1426.

In the present case, the Board found petitioners guilty of unfair labor practices on the basis that they refused to arbitrate grievances, when petitioners had a good-faith basis for believing they were first entitled to circuit court determinations of the arbitrability of the grievances. The lack of any Board rules providing that failure to arbitrate an employee grievance constitutes an unfair labor practice perhaps prejudiced petitioners in the sense that they had no prior warning that their actions might constitute unfair labor practices. However, as previously indicated, the present findings of unfair labor practices on the parts of petitioners should not, in themselves, be deemed determinative evidence of petitioners' motives in any future unfair labor practice proceedings in which petitioners are involved. The petitioners point to no other harm which they incurred as a result of the Board's announcing in an adjudicatory decision that refusal to arbitrate an employee grievance involving interpretation or application of the terms of a collective-bargaining agreement constitutes an unfair labor practice. For the above reasons, we hold that the Board acted properly in so proceeding.

The petitioners also assert that the grievances involved in these cases are inarbitrable because the language of the relevant collective-bargaining agreements precludes arbitration of such grievances. They also assert the grievances are inarbitrable because, under the doctrine

of nondelegability of the discretionary powers of school boards and community college boards, they could not have legally delegated to arbitrators their discretionary and managerial powers over personnel matters.

■ The doctrine of nondelegability provides that a school board may not delegate to another the exercise of its discretionary duties and responsibilities. (*Illinois Education Association Local Community High School District 218 v. Board of Education School of District No. 218* (1975), 62 Ill. 2d 127, 340 N.E.2d 7.) The doctrine is based on the principle that the people have the right to have discretionary powers pertaining to matters of public education exercised solely by those whom they have elected to serve on school boards. (*Stroh v. Casner* (1916), 201 Ill. App. 281.) The employment of personnel is one of the nondelegable functions of school boards. *Board of Trustees of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473.

We concur with the Board's conclusion that consideration of possible conflicts between the Act and the doctrine of nondelegability of the discretionary powers of school boards is best postponed until after the arbitration of all issues presented by the grievances involved in these cases, including the arbitrability issues. In the event the arbitrators would hold that the grievances are inarbitrable and their decisions would be sustained, a ruling by either the Board or this court concerning the relationship between the Act and the nondelegability doctrine would amount to an advisory opinion, which would have no bearing on the outcome of this litigation. (See *National Jockey Club v. Illinois Racing Comm'n* (1936), 364 Ill. 630, 5 N.E.2d 224 (court has no power to declare for governance of future cases rules of law which cannot affect the result in the case before it).) The relationship between the nondelegability doctrine and the Act will best be considered (if it is necessary to consider this issue) by the Board after arbitration of the grievances involved in these cases. See *Compton*, 123 Ill. 2d 216, 526 N.E.2d 149.

The Board also did not consider whether the grievances are arbitrable under the terms of the applicable collective-bargaining agreements. In *Compton*, this court concluded that the Board may properly require initial resolution of the arbitrability issue by the arbitrator, subject to review by the Board and the appellate court. (*Compton*, 157 Ill. App. 3d at 444, 510 N.E.2d at 512.) Since the arbitrability of the grievances involved in these appeals under the terms of the respective collective-bargaining agreements has not been addressed by either an arbitrator or by the Board, we will not address that issue at this time.

See *Compton*, 123 Ill. 2d 216, 526 N.E.2d 149.

Prairie State contends the Board lacked jurisdiction to rule upon the unfair labor practice charge filed against it, because the complaint charging it with an unfair labor practice was signed by the Board's Executive Director, as opposed to the members of the Board, and is therefore void. In support of this argument, Prairie State asserts that section 15 of the Act authorizes only the Board to issue a complaint (Ill. Rev. Stat. 1985, ch. 48, par. 1715), while the National Labor Relations Board is authorized to designate agents or agencies which may issue complaints charging unfair labor practices. (See 29 U.S.C. §160(b) (1982).) Prairie State also notes that the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1601 through 1627), unlike the Illinois Educational Labor Relations Act, authorizes State and local labor relations boards to delegate to subordinate employees certain powers involving the handling of unfair labor practice complaints. (Ill. Rev. Stat. 1985, ch. 48, par. 1605(f).) Finally, Prairie State observes that many Illinois decisions hold that school boards may not delegate their authority over personnel matters to subordinate employees.

██ The complaint charging Prairie State with an unfair labor practice based on its refusal to arbitrate Albrecht's and Bieker's grievances was signed by Robert Perkovich, the Board's Executive Director. In its answer to the complaint, Prairie State asserted the Executive Director's alleged lack of authority to issue complaints as an affirmative defense to the charges.

The test for determining whether an administrative agency may delegate a particular function to a subordinate employee is whether the power exercised by the subordinate employee "is so important, requiring the exercise of judgment on matters of policy, as to preclude the likelihood that the legislature would have been willing to have the particular power exercised by anyone other than the ultimate authority within the agency." (1 F. Cooper, State Administrative Law 92 (1965).) In conformity with this principle, the supreme court has held that absent statutory provisions to the contrary, administrative agencies may delegate to hearing officers their power to hear evidence in contested cases. *Starkey v. Civil Service Comm'n* (1983), 97 Ill. 2d 91, 454 N.E.2d 265; *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785.

At the time of the Board's decision from which Prairie State appeals, section 5(f) of the Act provided, "[t]he Board may employ such personnel as may be necessary to administer this Act and to make expenditures of funds appropriated to it." (Ill. Rev. Stat. 1985, ch. 48,

par. 1705(f).) An amended version of this section, which becomes effective July 1, 1988, provides:

> "The Board may appoint or employ an executive director, attorneys, hearing officers, and such other employees as it deems necessary to perform its functions. The Board shall prescribe the duties and qualifications of such persons appointed and, subject to the annual appropriation, fix their compensation and provide for reimbursement of actual and necessary expenses incurred in the performance of their duties." (Ill. Rev. Stat. 1985, ch. 48, par. 1705(f) (as amended by Pub. Act 85—924, eff. July 1, 1988).)

Section 5(f), considered together with its recent amendment, reflects a legislative intent that the Board have the power to delegate functions which do not result in the final adjudication of substantive rights to such of its subordinate employees as it sees fit.

■■ The issuance of a complaint by the Board's Executive Director does not result in the final adjudication of any substantive rights. Following the issuance of a complaint by its Executive Director, the Board retains authority to rule upon the charge or charges stated in the complaint, as indeed it did in the present case. It is quite unlikely that the legislature would have regarded the issuance of complaints as a matter of such importance that it would have desired this power to be exercised only by the members of the Board themselves. In view of the relevant statutes and the principle that administrative agencies may generally delegate to subordinate employees functions which do not finally adjudicate substantive rights, or otherwise have an important impact on public policy, we cannot say the Board acted improperly in delegating the power to issue complaints to its Executive Director. For the above reasons, this case is distinguishable from cases such as *Bessler v. Board of Education of Chartered School District No. 150* (1973), 11 Ill. App. 3d 210, 296 N.E.2d 89, which hold that school boards may not delegate to others, including their personnel directors, authority to take final action in personnel matters.

The decisions of the Illinois Educational Labor Relations Board are reversed to the extent they find petitioners guilty of unfair labor practices within the meaning of section 14(a)(5) of the Act; in all other respects the Board's decisions are affirmed.

Affirmed in part; reversed in part.

McCULLOUGH and LUND, JJ., concur.